IN THE  UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

JEFFREY M. STEIN,      )
JOHN LANNING,       )
RICHARD SMITH,       )
JEFFREY EISCHEID,      )  C.A. No.  1:06-cv-5007-LAK
PHILIP WIESNER,       )  Crim. No. 1:05-cr-00888-LAK
JOHN LARSON,        )
ROBERT PFAFF,        )
LARRY DELAP,        )
STEVEN GREMMINGER,     )
GREGG RITCHIE,       )
RANDALL BICKHAM,      )
MARK WATSON,        )
CAROL G. WARLEY,      )
CARL HASTING,        )
RICHARD ROSENTHAL, and    )
DAVID GREENBERG,      )
              )
      Plaintiffs,    )
              )
      v.       )
              )
KPMG LLP,         )
              )
      Defendant.    )

## COMPLAINT FOR ADVANCEMENT

Plaintiffs Jeffrey M. Stein, John Lanning, Richard Smith, Jeffrey Eischeid, Philip Wiesner,

John Larson, Robert Pfaff, Larry DeLap, Steven Gremminger, Gregg Ritchie, Randall Bickham,

Mark Watson, Carol Warley, Carl Hasting, Richard Rosenthal, and David Greenberg, by and

through undersigned counsel, hereby seek summary relief for the claims set forth herein pursuant

to 28 U.S.C. §§ 2201 and 2202 and the Court's Opinion dated June 26, 2006 in United States v.

Stein, et al., Crim. No. 1:05-cr-00888-LAK (S.D.N.Y.) (the "Opinion"; attached as Exhibit A ).

## NATURE OF THE ACTION

1.      This action stems from the refusal of Defendant KPMG LLP ("KPMG") to advance legal fees and expenses to Plaintiffs in connection with the criminal investigation and prosecution (the "Prosecution") by the United States Attorney for the Southern District of New York ("USAO") of Plaintiffs related to Plaintiffs' purported involvement in an alleged conspiracy to defraud the United States and to violate the tax laws, as charged in the Superseding Indictment in United States v. Stein.  Plaintiffs are former partners and employees of KPMG, which provided to its clients tax advice related to investment strategies at issue in the Superseding Indictment. Plaintiffs have been prosecuted by reason of alleged conduct arising from and within the scope of their duties and responsibilities at KPMG.

2.      Plaintiffs bring this action pursuant to the Court's findings in the Opinion that KPMG would have advanced legal fees and expenses to Plaintiffs but for unconstitutional interference with KPMG's practice and policy of advancing such expenses by the USAO through the Thompson Memorandum and by the conduct of the Assistant United States Attorneys assigned to the Prosecution.

3.      Plaintiffs, by their complaint herein, seek a summary determination and declaration, and a speedy hearing thereon, that they are entitled to advancement of legal fees and expenses from KPMG for the defense of the Prosecution, and legal fees and expenses incurred in seeking advancement of legal fees and expenses.  As described more fully below, KPMG is obligated to pay such fees and expenses to Plaintiffs in accordance with an implied contract providing for advancement of such fees and expenses consistent with KPMG's thirty-year unbroken practice of doing so in civil, regulatory, and criminal cases and prosecutions; an express agreement providing for advancement of such fees and expenses to Plaintiff Jeffrey Stein in a severance agreement

2

dated January 27, 2004 (the "Stein Severance Agreement"); and California law requiring advancement of such fees and expenses to Plaintiffs John Larson, Larry DeLap, Gregg Ritchie, Randy Bickham, Carl Hasting, Richard Rosenthal and David Greenberg (the "California Plaintiffs").

4.      Plaintiffs' claims herein are limited to advancement of legal fees and expenses by virtue of the Court's ancillary jurisdiction to adjudicate such claims in relation to a criminal case, as discussed in the Opinion and further below.  Plaintiffs do not waive any other claim for relief against KPMG, including, but not limited to, breach of contract or tortious conduct.

## PARTIES TO THE ACTION

5.      Plaintiff Jeffrey M. Stein was employed by KPMG from 1982 through January 2004.  He became a principal in 1987.  Among other leadership responsibilities, Stein was Vice Chair – Tax Operations from approximately July 1998 through approximately June 30, 2000, Vice Chair – Tax Services from approximately July 2000 through approximately April 2002, and Deputy Chairman from approximately April 2002 through approximately January 2004.  Stein left KPMG under the terms of the Stein Severance Agreement.

6.      In 1975, Plaintiff John Lanning began work at the Denver, Colorado office of KPMG.  In 1986, Lanning became partner-in-charge of KPMG's Denver office tax practice.  In October of 1996, Lanning became Vice Chair – Tax Services at KPMG and continued in that position through June 2000.  Lanning retired from KPMG on January 3, 2001.

7.      Plaintiff Richard Smith was employed by KPMG from 1992 through April 2005. He joined KPMG in 1992 as a senior manager in the Washington National Tax ("WNT") office, in Washington, D.C..  In 1995, he became a principal of KPMG.  In 1999, Smith was made the

partner-in-charge of WNT Operations.  In 2001, Smith became Western Area Managing Partner, Tax, and Mountain View, California became his principal place of business.  In the Spring of 2002 he became Vice Chair – Tax Services, and his office was moved to New York City.  In February 2004, he became Chief of Operations, Global Tax, where he worked until he was terminated in April 2005.

8.      Plaintiff Jeffrey Eischeid was hired in April 1981 as a tax specialist in KPMG's Atlanta office, where he remained during the entirety of his twenty-three year tenure at KPMG. Eischeid became a partner at KPMG in July 1989.  From 1998 to 2002, he headed a subgroup of the Personal Financial Planning ("PFP") practice named the Capital Transaction Strategies Group (which later changed its name to Innovative Strategies and/or Innovative Solutions).  In 2002, Eischeid was appointed the partner-in-charge of PFP at KPMG. Among his other responsibilities, he assisted KPMG's Office of General Counsel in defending various KPMG solutions in civil forums and in the IRS's promoter audit of KPMG.  KPMG selected Eischeid to represent it at the November 2003 Senate Hearings.  In January 2004, KPMG placed Eischeid on administrative leave, and he was terminated by KPMG in May 2004.

9.      Plaintiff Philip Wiesner joined KPMG in 1979.  He served as partner-in-charge of WNT at KPMG from 1991 through June 1999.  He retired from KPMG on January 2, 2004.

10.      Plaintiff John Larson was employed by KPMG from 1985 through 1997.  Larson was transferred to KPMG's San Francisco, California office in 1988, where he worked until he left the firm in 1997, when he was a senior manager.

11.      Plaintiff Robert Pfaff worked for KPMG for twenty years, from 1977 through 1997. Pfaff became a partner in 1985.  He left KPMG in 1997.

4

12.     Plaintiff Larry DeLap joined KPMG in 1966 as a staff accountant. He became a partner in 1974. From 1988 to 1993, DeLap served as the National Director of High Technology Tax Services. From 1993 to 1997, he was the national partner-in-charge of the tax practice for KPMG's Information, Communications & Entertainment line of business. From 1997 to 2002, he was partner-in-charge of KPMG's Department of Professional Practice – Tax. DeLap retired from KPMG in September 2002.

13.     Plaintiff Steven Gremminger joined KPMG in November 1994 as an Assistant General Counsel. He became an Associate General Counsel in July 1996. He became a non-equity principal of KPMG in July 1998 and an equity principal in October 2001. Gremminger worked at KPMG's offices in New York, N.Y. and Washington, D.C. Gremminger's employment with KPMG terminated in July 2005.

14.     Plaintiff Gregg Ritchie worked at KPMG from January 1977 through September 1998. From approximately January 1977 to approximately June 1987, Ritchie was an employee of KPMG. From approximately July 1987 to approximately September 1998, Ritchie was a partner at KPMG. On September 30, 1998, Ritchie voluntarily withdrew as a partner at KPMG.

15.     Plaintiff Randall Bickham joined KPMG in 1995 as a senior manager in the International Tax Group, where he worked in KPMG's Silicon Valley and San Francisco, California offices. From approximately July 2000 to April 2002, Bickham was a non-equity partner at KPMG, working as a member of the Innovative Strategies Group in KPMG's San Francisco, California office. Bickham voluntarily left KPMG in April 2002.

16.     Plaintiff Mark Watson joined KPMG as a staff accountant in January 1992. He became a non-equity partner in July 1997 and an equity partner in October 2001. From July 1998 to July 2000, Watson served as partner-in-charge of the Personal Financial Planning practice at

Washington National Tax. From July 2000 until his voluntary resignation from KPMG in July 2002, Watson worked on an international assignment in Amsterdam, the Netherlands.

17.     Plaintiff Carol G. Warley joined KPMG as a staff accountant in December 1977. In 1993 she became an equity partner at KPMG. Warley worked in the Houston office throughout her entire KPMG career. After the USAO alleged to KPMG that Warley was not cooperating in the grand jury investigation, in a letter dated November 15, 2004, KPMG threatened to separate Warley from the Partnership. In December 2004, KPMG requested that Warley agree to characterize that involuntary separation as a voluntary withdrawal from the Partnership. In order to preserve severance benefits she had accrued as a KPMG partner, in January 2005, Warley agreed to characterize her separation from KPMG as a voluntary withdrawal.

18.     Plaintiff Carl Hasting began work at KPMG in May 1997. Until July 1998, Hasting was a salaried employee of KPMG in its Woodland Hills, California office with the title of Senior Tax Manager. From July 1998 to approximately October 2001, Mr. Hasting had the title of "A Partner," but was in all significant respects an employee. His salary was fixed by KPMG without regard to KPMG's profits, he had no right to participate in the management of KPMG, and he was subject to regular performance reviews by his superiors. In short, Hasting did not enjoy the rights, privileges, or responsibilities that distinguish a partner from an employee. From October 2001 through May 2004, Hasting held the title "B Partner," pursuant to which his compensation was expressed as a share of profits but was fixed annually by KPMG. He had no role in firm management and his responsibilities did not change, except that he had no active role at the Firm after November 2003, when he resigned from the firm. Throughout his employment at KPMG, including as an A and B partner, Hasting was an at-will employee. Hasting was an "employee" of

6

KPMG for purposes of the California Labor Code throughout his tenure at KPMG, from 1997 through 2004.

19.     Plaintiff Richard Rosenthal began working at KPMG in 1978 in KPMG's Chicago office.  He became a partner in 1987.  In 1998 he became the Western Area Managing Partner, Tax and worked in KPMG's Los Angeles, California office.  In July 2000, he became Vice Chairman – Tax Operations and began working in KPMG's office in New York City.  Rosenthal became the Chief Financial Officer of KPMG in 2002.  Rosenthal left KPMG in approximately January 2005.

20.     Plaintiff David Greenberg first joined KPMG in 1989 as a manager and left the firm in 1994 as an equity partner. He rejoined KPMG in the Spring of 1999 as an equity partner in the Los Angeles, California office. He resigned from KPMG effective August 2003.

21.     Defendant KPMG is a Delaware limited liability partnership with its principal place of business located in New York, New York.

## JURISDICTION

22.     This action is initiated pursuant to the Court's ancillary jurisdiction to adjudicate the advancement of legal fees and expenses in relation to Plaintiffs' defense of the Prosecution and 18 U.S.C. § 3231, which gives "[t]he district courts of the United States . . . original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."

## FACTUAL ALLEGATIONS

### Wrongful Termination Of Advancement Of Legal Fees And Expenses For All Plaintiffs

23.     Prior to February 2004, it had been the longstanding practice of KPMG to advance and pay legal fees and expenses, without a preset cap or condition of cooperation with the government, for counsel for current and former partners, principals, and employees of the firm in

those situations where separate counsel was appropriate to represent the individual in any civil, criminal or regulatory proceeding involving activities arising within the scope of the individual's duties and responsibilities as a KPMG partner, principal, or employee.

24.    As of February 2004, this practice had been in existence, without exception, for at least thirty years. KPMG followed this practice without regard to economic costs or considerations with respect to individuals or the firm. This practice was also followed regardless of whether KPMG's personnel were charged with criminal wrongdoing in an indictment, or even if they had been convicted of a crime at trial.

25.    As past examples of KPMG's adherence to this practice, in or about the mid-1970s, two employees of KPMG were indicted for and convicted of violations of federal criminal law. KPMG advanced legal fees and expenses for the defense of these two individuals through the investigation and the trial, and in post-conviction proceedings, including appeal. More recently, KPMG advanced more than $20 million in legal fees and expenses for the defense of four partners in an enforcement action brought by the Securities and Exchange Commission, and a related criminal investigation.

26.    As a further example of this practice, KPMG has advanced, and is currently advancing, the legal fees and expenses incurred by Plaintiffs herein, and other current and former KPMG partners, principals and employees, in connection with numerous civil actions based on the same allegations of wrongdoing as those set out in the Superceding Indictment. However, KPMG will only advance legal fees and expenses incurred by Plaintiffs in connection with such civil actions if Plaintiffs use counsel in those actions different from the counsel being used in the Prosecution.

8

27.    KPMG's uniform thirty-year practice followed without exception created a reasonable expectation by Plaintiffs that their legal fees and expenses would be advanced in relation to any criminal investigation or prosecution arising from and within the scope of their duties and responsibilities at KPMG.  Consistent with Delaware policy favoring advancement of legal fees and expenses, KPMG benefited from this reasonable expectation in recruiting and retaining personnel.

28.    This practice of advancing legal fees and expenses, unchallenged until in or about February 2004, constituted an implied contract between Plaintiffs and KPMG requiring the advancement of legal fees and expenses for the defense of civil, criminal and regulatory investigations and proceedings, including the Prosecution.  Alternatively, this implied obligation to advance legal fees and expenses may be fairly inferred from KPMG's partnership agreement pursuant to the implied covenant of good faith and fair dealing that inheres in every contract under Delaware law.

29.    In or about March 2004, as found by the Court in the Opinion, KPMG broke from its longstanding practice of advancing fees and expenses as a result of unconstitutional conduct by the USAO, implementing the Thompson Memorandum, to coerce KPMG to condition and otherwise limit the advancement of legal fees and expenses to Plaintiffs for the defense of the Prosecution.

30.    Because of the USAO's unconstitutional interference, KPMG did not exercise independent judgment in good faith as to its obligation to advance legal fees and expenses to Plaintiffs. KPMG failed to exercise such independent judgment in an effort to avoid being indicted by demonstrating that it was fully cooperating with the USAO and was in full compliance with the Thompson Memorandum.

31.     Absent interference by the USAO, KPMG would have advanced legal fees and expenses to Plaintiffs for the defense of the Prosecution, without condition or limitation.   The USAO's interference with advancement of legal fees and expenses to Plaintiffs violated the Fifth and Sixth Amendments of the U.S. Constitution.

32.     Plaintiffs retained counsel in defending the Prosecution.  As a result, Plaintiffs have incurred and continue to incur significant legal fees and expenses in connection with the Prosecution.  Plaintiffs have made demand upon KPMG for payment and been denied, except as indicated below.

33.     Except Plaintiff Stein, to whom legal fees and expenses were advanced pursuant to the Stein Severance Agreement as described below, Plaintiffs were advanced fees only upon the following terms and conditions, if at all:  (a) cooperation by Plaintiffs with the USAO in the criminal investigation, (b) advancement of fees and expenses for each individual Plaintiff would be capped at $400,000, and (c) if Plaintiffs were charged with criminal wrongdoing, then advancement would be terminated.  Fees were not advanced if Plaintiffs (other than Plaintiff Stein) refused to sign a letter setting out these conditions.  These unprecedented conditions were imposed by KPMG as a result of coercion by the USAO.  Upon indictment, if not earlier, KPMG terminated the advancement of legal fees and expenses to Plaintiffs.

Wrongful Termination Of Advancement Of Legal Fees And Expenses For Plaintiff Stein

34.     In or about January 2004, Plaintiff Stein, then Deputy Chairman of KPMG, resigned from KPMG under the terms of the Stein Severance Agreement negotiated between himself and his counsel, on the one hand, and KPMG's then-Chairman Eugene O'Kelley and KPMG's Deputy General Counsel Joseph Loonan, on the other hand, and executed on or about January 27, 2004.

35.     The Stein Severance Agreement provides for the advancement of legal fees and expenses to Mr. Stein.  Specifically, Section 13 of the Severance Agreement provides, in pertinent part:

> *Consistent with the Firm's general policy and practice*, Member [Stein] shall be represented *in all legal proceedings or actions* set forth above and those *brought against the Member* arising from and within the scope of his duties and responsibilities as a principal, member, director, Chief Operating Officer, or Deputy Chairman of the Partnership or the Board of Directors of Americas, or as a Member of the International Executive Team of International, by qualified counsel (including the Firm's Office of General Counsel and/or outside counsel designated by the General Counsel).  In the event, however, that the Firm's General Counsel, in consultation with outside counsel responsible for jointly defending the Firm and/or any other person associated with or formerly associated with the Firm and the Member, reasonably determine that joint representation is or would be inappropriate, or *if Member is the only party to a proceeding or action, the Firm shall retain on Member's behalf, and with Member's consent, which consent shall not be unreasonably withheld, appropriate and qualified separate counsel.  The cost of such separate counsel, and related expenses, shall be the responsibility of the Firm and not that of the Member*, provided that such action would not be inconsistent with any applicable law, rule, or regulation. . . .

(Emphasis added).

36.     As described above, at the time of the execution of the Stein Severance Agreement, KPMG's "general policy and practice" for the prior thirty years had been to advance legal fees and expenses, without condition or limitation, to partners, principals, and employees for the defense of civil, regulatory, and criminal investigations and proceedings.

37.     On or about May 5, 2005, KPMG, through its Deputy General Counsel Joseph Loonan, sent a letter to Plaintiff Stein terminating the advancement of legal fees and expenses by KPMG for the defense of the criminal investigation that eventually led to the Prosecution.  Plaintiff Stein has continued to seek advancement of legal fees and expenses from KPMG, which it has refused.

11

<u>Wrongful Termination Of Advancement Of Legal Fees And Expenses For California Plaintiffs</u>

38.     Plaintiffs Richard Smith, John Larson, Larry DeLap, Gregg Ritchie, Randy Bickham, Carl Hasting, Richard Rosenthal, and David Greenberg were partners, principals or employees of KPMG who, at times relevant to the Prosecution, were employed by KPMG in California. As discussed below, California law obligates KPMG to advance legal fees and expenses to the California Plaintiffs for the defense of the Prosecution.

<u>FIRST CLAIM FOR RELIEF</u>

<u>Advancement Of Legal Fees And Expenses Based On Implied Contract</u>

39.     Plaintiffs incorporate herein by reference Paragraphs 1 through 38, and the findings of the Court in the Opinion, as if fully set forth herein.

40.     Pursuant to KPMG's longstanding and previously unchallenged practice of advancing legal fees and expenses to its partners, principals and employees for the defense of legal proceedings brought against any such individuals, which created a reasonable expectation of such advancement, KPMG is required by implied contract to advance legal fees and expenses incurred by a partner, principal or employee for the defense of legal proceedings brought against any such individual arising from and within the scope of the performance of such individual's duties and responsibilities at KPMG.

41.     Alternatively, pursuant to KPMG's longstanding and previously unchallenged practice of advancing legal fees and expenses to its partners, principals and employees for the defense of legal proceedings brought against any such individual, which created a reasonable expectation of such advancement, KPMG is obligated to advance legal fees and expenses incurred by a partner, principal or employee for the defense of legal proceedings brought against any such

individual arising from and within the scope of the performance of such individual's duties and responsibilities at KPMG by virtue of the implied covenant of good faith and fair dealing under Delaware law that inheres in KPMG's partnership agreement. KPMG breached this implied covenant of good faith and fair dealing by wrongfully and without justification terminating advancement of legal fees and expenses for Plaintiffs in contravention of its longstanding practice.

42.     As described above, Plaintiffs are entitled as a matter of implied contract with KPMG or by virtue of the implied covenant of good faith and fair dealing inhering in KPMG's partnership agreement to advancement of legal fees and expenses they have incurred, and will incur, in connection with the Prosecution.  Plaintiffs were charged in the Prosecution for alleged conduct arising from and within the scope of their duties and responsibilities at KPMG. Accordingly, Plaintiffs are entitled to an order (a) declaring that Plaintiffs are entitled to advancement of legal fees and expenses incurred in connection with the Prosecution; (b) declaring that KPMG is liable for those legal fees and expenses incurred by Plaintiffs in connection with the Prosecution; (c) ordering KPMG to pay all legal fees and expenses already incurred by Plaintiffs in connection with the Prosecution, including legal fees and expenses incurred in connection with seeking advancement of legal fees and expenses; and (d) ordering KPMG to pay all future statements for legal fees and expenses submitted by Plaintiffs in connection with the Prosecution, including any post-conviction proceedings and appeal of any conviction.

## SECOND CLAIM FOR RELIEF

### Advancement Of Legal Fees And Expenses Based On The Stein Severance Agreement

43.     Plaintiff Jeffrey M. Stein incorporates herein by reference Paragraphs 1 through 42, and the findings of the Court in the Opinion, as if fully set forth herein.

13

44.     In addition to the claims for advancement of legal fees and expenses alleged elsewhere herein, KPMG was obligated to advance legal fees and expenses for Plaintiff Stein for the defense of the Prosecution by virtue of the Stein Severance Agreement.

45.     On or about May 5, 2005, KPMG wrongfully and without justification terminated advancement of legal fees and expenses for Plaintiff Stein for the defense of the Prosecution in breach of the Severance Agreement.

46.     Plaintiff Stein was charged in the Prosecution for alleged conduct arising from and within the scope of his duties and responsibilities at KPMG.  Accordingly, Plaintiff Stein is entitled to an order (a) declaring that he is entitled to advancement of legal fees and expenses incurred in connection with the Prosecution; (b) declaring that KPMG is liable for those legal fees and expenses incurred by him in connection with the Prosecution; (c) ordering KPMG to pay all legal fees and expenses already incurred by him in connection with the Prosecution, including legal fees and expenses incurred in connection with seeking advancement of legal fees and expenses; and (d) ordering KPMG to pay all future statements for legal fees and expenses submitted by him in connection with the Prosecution, including any post-conviction proceedings and appeal of any conviction.

## THIRD CLAIM FOR RELIEF

### Advancement Of Legal Fees And Expenses Based On California Law

47.     Plaintiffs Richard Smith, John Larson, Larry DeLap, Gregg Ritchie, Randy Bickham, Carl Hasting, Richard Rosenthal and David Greenberg incorporate herein by reference Paragraphs 1 through 46, and the findings of the Court in the Opinion, as if fully set forth herein.

48.     In addition to the claims for advancement of legal fees and expenses alleged elsewhere herein, the California Plaintiffs are entitled to advancement of legal fees and expenses under the California Labor Code and the California Corporations Code.

49.     Section 2802(a) of the California Labor Code provides that:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

50.     Section 16401(c) of the California Corporations Code provides that:

> A partnership shall reimburse a partner for payments made and indemnify a partner for liabilities incurred by the partner in the ordinary course of the business of the partnership or for the preservation of its business or property.

51.     The Prosecution of the California Plaintiffs arose solely out of their work on behalf of KPMG with respect to tax advice related to investment strategies at issue in the Superseding Indictment in the ordinary course of KPMG's business.  Therefore, both Sections 2802(a) and 16401(c) require that KPMG advance legal fees and expenses for the California Plaintiffs.

52.     KPMG's failure and refusal to advance legal fees and expenses that the California Plaintiffs have necessarily incurred in connection with the Prosecution constitute a violation of their rights under California law.  Accordingly, the California Plaintiffs are entitled to an order (a) declaring that they are entitled to advancement of legal fees and expenses incurred in connection with the Prosecution; (b) declaring that KPMG is liable for those legal fees and expenses incurred by them in connection with the Prosecution; (c) ordering KPMG to pay all legal fees and expenses already incurred by the California Plaintiffs in connection with the Prosecution, including legal fees and expenses incurred in connection with seeking advancement of legal fees

and expenses; and (d) ordering KPMG to pay all future statements for legal fees and expenses submitted by the California Plaintiffs in connection with the Prosecution, including any post-conviction proceedings and appeal of any conviction.

WHEREFORE, Plaintiffs pray for an Order pursuant to 28 U.S.C. §§ 2201 and 2202:

1.    Granting judgment in favor of Plaintiffs and declaring that KPMG is required to advance legal fees and expenses to Plaintiffs, as outlined below;

2.    Directing Defendant KPMG to pay all legal fees and expenses that have been incurred by Plaintiffs in connection with the Prosecution, including legal fees and expenses incurred in connection with seeking advancement of legal fees and expenses, plus compound interest at the legal rate;

3.    Ordering Defendant KPMG to continue to make advances to Plaintiffs of legal fees and expenses that they incur in the future for the defense of the Prosecution, including any post-conviction proceedings and appeal from any conviction, and that such advances be made no later than 20 days after a request for advance has been received by KPMG from a Plaintiff;

4.    Awarding Plaintiffs attorneys' fees and costs incurred in prosecuting this case;

5.    Granting Plaintiffs a speedy hearing on their right to advancement; and

6.    Granting such other and further relief as is just under the circumstances.

RICHARDS SPEARS KIBBE & ORBE LLP

By: _David Spears_

David Spears (DS-2720)

One World Financial Center
New York, New York  10281
(212) 530-1800

Attorneys for Plaintiff Jeffrey Stein


ARKIN KAPLAN RICE LLP


By: _/s/ Stanley S. arkin_

Stanley S. Arkin (SA-1373)

590 Madison Avenue, 35th Floor
New York, New York 10022
(212) 628-5566

Attorneys for Plaintiff Jeffrey Eischeid


KOBRE & KIM LLP

By: _/s/ Michael S. Kim_

Michael S. Kim (MK-0308)

800 Third Avenue
New York, New York 10022
(212)488-1200

Attorneys for Plaintiff Mark Watson

KOSTELANETZ & FINK, LLP

By: _/s/ Robert S. Fink_
Robert S. Fink (RF-7924)

530 Fifth Avenue
New York, New York 10036
(212) 808-8100

Attorneys for Plaintiff Richard Smith

SIMON LESSER P.C.

By: _/s/ Leonard F. Lesser_
Leonard F. Lesser (LL-4054)

420 Lexington Avenue
New York, New York 10170
(212) 599-5455

Attorneys for Plaintiff David Greenberg

RANDALL S. BICKHAM

By: _/s/ Randall S. Bickham_
Randall S. Bickham

3000 Sand Hill Road, Bldg. 2, Suite 110
Menlo Park, CA 94025-7177

Plaintiff Pro Se

SAVITT & BRUCE LLP

By: /s/ Stephen Willey
Stephen Willey (SW-6779)

1325 Fourth Avenue, Suite 1410
Seattle, WA 98101-2505
(206) 749-0500

Attorneys for Plaintiff John Larson


OVERLAND BORENSTEIN
SCHEPER & KIM LLP

By: /s/ David C. Scheper
David C. Scheper (DS-0072)

300 South Grand Avenue, Suite 2750
Los Angeles, California 90071-3144
(213) 613-4655

Attorneys for Plaintiff Robert Pfaff


DEPETRIS & BACHRACH, LLP

By: /s/ Ronald E. DePetris
Ronald E. DePetris (RD-8117)

240 Madison Avenue
New York, New York 10016
(212) 557-7747

Attorneys for Plaintiff Philip Wiesner

19

DOAR RIECK KALEY & MACK

By: /s/ John F. Kaley
     John F. Kaley (JK-3598)

217 Broadway
Suite 707
New York, New York 10007
(212) 619-3730

Attorneys for Plaintiff Steven Gremminger


HAFETZ & NECHELES

By: /s/ Susan R. Necheles
     Susan R. Necheles (SRN-1215)

500 Fifth Avenue
New York, New York 10110
(212) 997-7595

Attorneys for Plaintiff Richard Rosenthal


BRYAN CAVE LLP

By: /s/ Jay Warren
     Jay Warren (JW-3600)

1290 Avenue of the Americas
New York, New York 10104-3300
(212) 541-2000

Attorneys for Plaintiff Carol Warley

AKIN GUMP STRAUSS HAUER
& FELD LLP

By: /s/ Michael Madigan
Michael Madigan (MM-3797)

590 Madison Avenue
New York, New York 10022-1564
(212) 872-1000

Attorneys for Plaintiff John Lanning


LITMAN, ASCHE & GIOIELLA, LLP

By: /s/ Russell M. Gioiella
Russell M. Gioiella (RG-5898)

45 Broadway Atrium
New York, New York 10006
(212)809-4500

Attorneys for Plaintiff Carl Hasting


LANKLER SIFFERT & WOHL LLP

By: /s/ John R. Wing
John R. Wing (JW-3847)

33rd Floor, 500 Fifth Avenue
New York, New York 10110-3398
(212) 921-8399

Attorneys for Plaintiff Larry DeLap

21

MCNAMARA, SPIRA & SMITH

By: _/s/ David C. Smith_____
David C. Smith (DS-9853)
10866 Wilshire Boulevard, Suite 800
Los Angeles, California 90024
(310) 979-2586

Attorneys for Plaintiff Gregg Ritchie