*Robert S. Bennett (RB 5854)*
*Skadden, Arps, Slate, Meagher & Flom LLP*
*1440 New York Avenue, NW*
*Washington, DC 20005*
*(202) 371-7000*

*Charles A. Stillman (CS 0154)*
*Stillman, Friedman & Shechtman, P.C.*
*425 Park Avenue*
*New York, New York 10022*
*(212) 223-0200*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                 :

JEFFREY STEIN, et al.,            :

            Plaintiffs,     :

         v.           :         06-CV-5007 (LAK)

                            :

KPMG LLP,                 :

            Defendant.     :

                            :
------------------------------------------------------x

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KPMG'S MOTION TO DISMISS THE COMPLAINT AND COMPEL ARBITRATION

Dated:  July 26, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................ 1

BACKGROUND .............................................................................................. 7

    I.     DEFENDANTS' CONTRACTS WITH KPMG AND KPMG'S PAYMENT OF CRIMINAL DEFENSE EXPENSES PRIOR TO INDICTMENT ........................................................................................ 7

    II.    KPMG'S ROLE IN THE PROCEEDINGS LEADING TO THE COURT'S JUNE 26 OPINION IN *U.S. V. STEIN* ................................... 11

        A.    The Motion to Remedy the Violation of Defendants' Constitutional Rights ....................................................................... 12

        B.    The Hearing on the Motion .......................................................... 13

    III.   THE JUNE 26 OPINION ................................................................. 17

        A.    The Opinion's Findings With Respect to KPMG's Payment of Legal Fees ................................................................................ 17

        B.    The Opinion's Characterization of KPMG's Role In the Proceedings .................................................................................. 21

SUMMARY OF ARGUMENT ...................................................................... 22

ARGUMENT ................................................................................................... 24

    I.     BECAUSE THE *STEIN* DEFENDANTS VOLUNTARILY AGREED TO ARBITRATE ANY CLAIMS BETWEEN THEMSELVES AND KPMG, FEDERAL LAW REQUIRES THEM TO DO SO NOW ................................... 24

        A.    The *Stein* Defendants Voluntarily Agreed To Arbitrate Their Claims ......................................................................................... 26

        B.    The Arbitrability Of The *Stein* Defendants' Claims Must Be Decided By An Arbitrator In The First Instance ........................... 27

        C.    The Arbitration Provisions In KPMG's Partnership And Other Agreements Apply To The Present Dispute ............................. 27

        D.    Requiring The *Stein* Defendants To Arbitrate The Issue of Attorneys' Fees Does Not Violate Public Policy ......................... 29

        E.    The Additional Claim of Defendant Stein and the Additional Claim of the So-Called "California Plaintiffs" Also Are Subject to Arbitration ................................................................................... 30

    II.    EXERCISE OF ANCILLARY JURISDICTION IN THIS CASE WOULD EXCEED THE COURT'S AUTHORITY ............................................ 30

        A.    The Constitutional Limitations on Ancillary Jurisdiction Prevent Its Exercise Here .......................................................... 31

B.    The Court's Statutory Jurisdiction Limits the Exercise of Criminal Ancillary Jurisdiction As Well.................................................................34

C.    Use of A Summary Process To Resolve these Civil Claims Would Violate KPMG's Rights........................................................................35

    1.    The Federal Rules Do Not Authorize a Summary Proceeding in This Case..............................................................36

    2.    The State Law Cited By the Court Cannot Supplant KPMG's Procedural Rights Under Federal Law ...........................39

III.    THE DEFENDANTS' IMPLIED CONTRACT CLAIM FAILS AS A MATTER OF LAW ...................................................................................40

A.    KPMG Has No Statutory Obligation To Advance Legal Fees For The *Stein* Defendants ...........................................................................41

B.    The Partnership Agreement Precludes the Existence of Implied Contract...............................................................................................43

C.    The *Stein* Defendants Fail To Allege Facts Sufficient To Establish Essential Elements Of An Implied Contract.......................................46

D.    The Implied Covenant of Good Faith And Fair Dealing Does Not Compel Advancement of Fees ..................................................................48

CONCLUSION...................................................................................................................50

## TABLE OF AUTHORITIES

### CASES

*Advanced Mining System, Inc. v. Fricke*, 623 A.2d 82 (Del. Ch. 1992)...........................45

*Ambase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63 (2d Cir. 2003).........37

*Armstrong v. Manzo*, 380 U.S. 545, 85 S. Ct. 1187 (1965)...............................................38

*AT&T Techs., Inc. v. Communications Workers of America*,
475 U.S. 643, 106 S. Ct. 1415 (1986) ........................................................................ 28-29

*Bank of Nova Scotia v. United States*,
487 U.S. 250, 108 S.Ct. 2369 (1988) ……………………….…………………………...37

*Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005)...................26

*Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87 (2d Cir. 2005) ....................37

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. ___, 126 S. Ct. 1204 (2006).....................................................................26, 29

*CPR (USA) Inc. v. Spray*, 187 F.3d 245 (2d Cir. 1999)....................................................22

*Chase Manhattan Bank v. Iridium Africa Corp., et. al.*,
239 F. Supp. 2d 402 (D. Del. 2002)......................................................................43, 46

*Cincinnati SMSA L.P. v. Cincinnati Bell Cellular System Co.*,
708 A.2d 989 (Del. 1998) ......................................................................................45, 48

*Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251 (2d Cir. 1988)..................33

*Com/Tech Communication Technologies, Inc. v. Wireless Data System, Inc.*,
163 F.3d 149 (2d Cir. 1998)........................................................................................39

*Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957) ........................................................41

*ConnTech Development Co. v. University of Connecticut Education Properties,
Inc.*, 102 F.3d 677 (2d Cir. 1996)................................................................................26

*Continental Insurance Co. v. Rutledge & Co., Inc.*,
750 A.2d 1219 (Del. Ch. 2000)....................................................................................49

*Dimick v. Schiedt*, 293 U.S. 474, 55 S. Ct. 296 (1935)....................................................38

*Drinan v. Nixon*, 364 F. Supp. 853 (D. Mass. 1973) .................................................... 36-37

*DuLucca v. KKAT Management, LLC*, No. Civ. A. 1384-N,
2006 WL 224058 (Del. Ch. Jan. 23, 2006) ........................................................ 39-40

*Ellis v. Provident Life & Accident Insurance Co.*,
3 F. Supp. 2d 399 (S.D.N.Y. 1998) ....................................................................43

*Fasciana v. Electric Data System Corp.*, 829 A.2d 160 (Del. 2003)................................40

*Fermin v. Moriarty*, No. 96-Civ-3022,
2003 WL 21787351 (S.D.N.Y. Aug. 4, 2003) ....................................................31

*Fitzgerald v. Cantor*, No. C.A. 16297-NC,
1998 WL 842316 (Del. Ch. Nov. 10, 1998) .......................................................48

*Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC*,
371 F. Supp. 2d 571 (S.D.N.Y. 2005)...........................................................25, 27

*Garcia v. Teitler*, 443 F.3d 202 (2d Cir. 2006)................................. 22, 31, 33-35

*Guttman v. CFTC*, 197 F.3d 33 (2d Cir. 1999)........................................................38

*Hasting v. KPMG LLP*, No. BC 340378, slip op. at 15 (Cal. Super. Ct. Feb. 08,
2006) ......................................................................................................11

*H.C. Cook Co. v. Beecher*, 217 U.S. 497, 30 S. Ct. 601 (1910) ........................................32

*JLM Industrial, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) ...........................28

*Kokkonen v. Guardian Life Insurance Co.*,
511 U.S. 375, 114 S. Ct. 1673 (1994)................................................................31

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) ...............................................24

*Los Angeles Police Protective League v. City of Los Angeles*,
27 Cal. App. 4th 168 (Cal. Ct. App. 1994) ........................................................50

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
252 F. 3d 218 (2d Cir. 2001)..................................................................... 27-28

*Manchester Equip. Co., Inc. v. American Way Moving & Storage Co., Inc.*,
176 F. Supp. 2d 239 (D. Del. 2001)...................................................................46

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
460 U.S. 1, 103 S. Ct. 927 (1983)................................................................25, 29

*Morgan v. Grace*, No. Civ. A. 20430,
2003 WL 22461916 (Del. Ch. Oct. 29, 2003) ................................................48

*Nelson v. Adams USA, Inc.*,
529 U.S. 460, 120 S. Ct. 1579 (2000)..........................................................38

*Novinger v. E.I. DuPont de Nemours & Co.*, 809 F.2d 212 (3d Cir. 1987)......................33

*Owen Equip. & Erection Co. v. Kroger*,
437 U.S. 365, 98 S. Ct. 2396 (1978)............................................................34

*PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996) ................................................27

*PAMI-LEMB, Inc. v. EMB- NHC, LLC*, 857 A.2d 998 (Del. Ch. 2004) ..........................49

*Paramedics Electromedicina Comercial, Ltda. v. GE Medical System Information
Technologies, Inc.*, 369 F.3d 645 (2d Cir. 2004) ........................................28

*Peacock v. Thomas*, 516 U.S. 349, 116 S. Ct. 862 (1996)................................................32

*Rechler Partnership v. Resolution Trust Corp.*, No. 90-3091,
1990 WL 711357 (D.N.J. Sept. 7, 1990) .....................................................36

*Rufu v. United States*, 20 F.3d 63 (2d Cir. 1994)...........................................................34

*Ryder Energy Distributing Corp. v. Merrill Lynch Commodities Inc.*,
748 F.2d 774 (2d Cir. 1984)........................................................................41

*In re Santa Fe Pacific Corp. Shareholder Litigation*, 669 A.2d 59 (Del. 1995) ...............24

*Shearson/American Express Inc. v. McMahon*,
482 U.S. 220, 107 S. Ct. 2332 (1987)....................................................25-26

*Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration
International, Inc.*, 198 F.3d 88 (2d. Cir. 1999) ..........................................25

*Southeast Resources Recovery Facility Authority v. Montenay International
Corp.*, 973 F.2d 711 (9th Cir. 1992) ..........................................................30

*Thomas James Associates v. Jameson*, 102 F.3d 60 (2d Cir. 1996) .................................30

*United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130 (1966)..............................32

*United States v. Buhler*, 278 F. Supp. 2d 1297 (M.D. Fla. 2003).................................31

*United States v. Polishan*, 19 F. Supp. 2d 327 (M.D. Pa. 1998) ........................... 31, 33-34

*United States v. Schnitzer*, 567 F.2d 536 (2d Cir. 1977) ....................................................34

*United States v. Weissman*, No. S2 94 CR 760 (CSH),
1997 WL 334966 (S.D.N.Y. June 16, 1997) ........................................... 22-23, 31, 33, 35

*Vera v. Saks & Co.*, 335 F.3d 109 (2d Cir. 2003).............................................................28

*VonFeldt v. Stifel Financial Corp.*, Civ. Act. No. 15688, 1997 WL 525878
(Del. 1997) ................................................................................................................. 47-48

*Weinstock v. Lazard Debt Recovery GP, LLC*, No. Civ. A. 20048,
2003 WL 21843254 (Del. Ch. Aug. 1, 2003) ....................................................................40

*Wisdom Import Sales Co., LLC v. Labatt Brewing Co., Ltd*,
339 F.3d 101 (2d Cir. 2003)..............................................................................45, 47

*Wolfson v. Supermarkets General Holdings Corp.*, No. Civ. A. 17047,
2001 WL 85679 (Del. Ch. Jan. 23, 2001) ........................................................................49

*In re WorldCorp, Inc.*, 252 B.R. 890 (Bankr. D. Del. 2000) ............................................45

## CONSTITUTIONAL & STATUTORY PROVISIONS

U.S. Const., art. III, 2 ......................................................................................................31

9 U.S.C. § 2   ....................................................................................................................25

9 U.S.C. § 3   ....................................................................................................................26

9 U.S.C. § 16(a)(1)...........................................................................................................22

18 U.S.C. § 3231...........................................................................................................34, 35

28 U.S.C. § 2074...............................................................................................................37

California Corporations Code § 16401 ..............................................................................49

California Labor Code § 2802 ............................................................................................49

Del. Code Ann. tit. 6, § 15-110..........................................................................................42

Del. Code Ann. tit. 8, § 145 ...........................................................................39-40, 42, 45

Fed. R. Civ. P. 1 ...........................................................................................................36, 39

Fed. R. Civ. P. 57.................................................................................................. 36-38

## ARTICLES

Stephen A. Radin, *"Sinners Who Find Religion":  Advancement of Litigation Expenses To Corporate Officials Accused of Wrongdoing*, 25 Rev. Litig. 251 (2006)..................................................................................40

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KPMG'S MOTION TO DISMISS THE COMPLAINT AND COMPEL ARBITRATION**

KPMG LLP ("KPMG") respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss the Complaint for declaratory judgment for the advancement of legal fees, filed by Jeffrey Stein, John Lanning, Richard Smith, Jeffrey Eischeid, Philip Wiesner, John Larson, Robert Pfaff, Larry DeLap, Steven Gremminger, Gregg Ritchie, Randy Bickham, Mark Watson, Carol Warley, Carl Hasting, Richard Rosenthal, and David Greenberg (the "*Stein* Defendants" or "Defendants"), and to compel arbitration of their claims.

## INTRODUCTION

Claimants all are defendants in *United States v. Stein et al.*, 05-CR-0888 (LAK) ("*U.S. v. Stein*"). KPMG is not a party to that criminal proceeding and has not participated in any aspect of *U.S. v. Stein*, except as a non-party respondent to subpoenas.

In the criminal proceeding, the *Stein* Defendants filed a motion asserting that prosecutors had infringed their constitutional rights by improperly pressuring KPMG to stop advancing legal fees to them.[1] That motion sought remedies from the government, not KPMG. Nonetheless, on June 26, 2006, the Court in *U.S. v. Stein* held that it had ancillary jurisdiction to decide an unasserted civil claim against non-party KPMG for advancement of the Defendants' legal fees. The Court then directed the Clerk to open a civil docket, ordered the *Stein* Defendants to file any complaint against KPMG within 14 days, and encouraged them to seek declaratory relief against KPMG and request a speedy hearing. Further, notwithstanding that KPMG was not a party and had not been afforded any rights that a party ordinarily would have (such as the

---

[1] *See* Memorandum in Support of Certain Defendants' Motion to Remedy the Violation of Defendants' Constitutional Rights to Counsel and a Fair Trial Resulting from the Prosecutors' Wrongful Interference with Defendants' Ability to Obtain Advancement of Legal Fees from KPMG, 05-CR-0888 (LAK) [Doc 268] (the "January 12 Motion").

ability to call and cross-examine witnesses, obtain discovery, and put evidence in the record), the Court in a footnote stated that it would treat "papers" the *Stein* Defendants had previously filed against the government in the criminal proceeding as "a motion for an order directing KPMG to advance defense costs reasonably incurred and to be incurred by them from the date of indictment forward." (June 26 Op. at 78 n.238.)

On July 12, 2006, the *Stein* Defendants served a summons and civil complaint on KPMG seeking a declaratory judgment that KPMG is required, without limitation, to pay all legal fees and expenses that have been or will be incurred in the criminal proceeding (the "Complaint"). Before KPMG had even answered or otherwise responded to the Complaint, the Court directed KPMG to attend a hearing on July 13, the next day, at which it stated that KPMG had "until July 26 to respond to the *pending* motion" filed in the criminal case. (Hrg. Tr. at 7:25-8:1, July 13, 2006) (emphasis added).) KPMG submits this memorandum to serve both as its memorandum in support of its Motion to Dismiss the Complaint, in accordance with the Federal Rules of Civil Procedure, and, in accordance with the Court's July 13 directive, as a submission in response to any motion putatively filed against it.[2]

Regardless of how the *Stein* Defendants' claims are presented, KPMG respectfully submits, this Court should not entertain them and they should be rejected because the Court lacks subject matter jurisdiction over the claims and because Defendants cannot state a cognizable claim upon which relief can be granted. Specifically:

---

[2]    David Rivkin, who pled guilty to a superseding information on March 27, 2006, filed a complaint for declaratory and injunctive relief in *U.S. v. Stein* on July 10, 2006. On July 20, 2006, Mr. Rivkin filed a complaint in civil docket 06-CV-5007. His complaint seeks indemnification from KPMG. As of this date, KPMG has not been served with either complaint. Accordingly, KPMG reserves its rights to answer or otherwise move with respect to Rivkin's complaint when and if KPMG is properly served with the complaint, in accordance with the Federal Rules of Civil Procedure.

- The *Stein* Defendants' claims are subject to mandatory arbitration provisions in KPMG's Partnership Agreement and other binding agreements.  Accordingly, the Court is required by federal statute to dismiss or stay the proceeding and refer the claims to arbitration.  If the Court denies arbitration, or enters any order directed at KPMG inconsistent with its rights to have claims between former members of the partnership and the partnership decided by arbitration, that order is subject to immediate appeal.

- The Court's exercise of ancillary jurisdiction over the advancement claims exceeds the Court's constitutional and statutory jurisdiction.

- If the Court nonetheless assumes jurisdiction, Defendants' claim for advancement should be dismissed for failure to state a claim.  KPMG has no legal obligation to advance attorneys' fees for the *Stein* Defendants, whether pursuant to governing Delaware partnership law, the Partnership Agreement, other pertinent contracts, or KPMG's past practices. Defendants cannot state a claim for breach of an implied contract because KPMG's written Partnership Agreement contains a broad merger clause and expressly encompasses all rights and obligations between the parties.

Further, a summary proceeding imposed by the Court would deprive KPMG of due process and is not sanctioned by any applicable statute or the Federal Rules of Civil Procedure. If the claims ultimately are determined not to be arbitrable, KPMG would be entitled to obtain discovery and to put on individualized evidence before a jury pertaining to (i) any of the *Stein* Defendants' breaches of fiduciary duty to the partnership, (ii) the written instruments many of them signed expressly releasing KPMG from liability for legal fees and/or acknowledging KPMG's unfettered discretion with respect to advancement of fees, (iii) any Defendant's unclean hands, (iv) the fact that several of them left KPMG in 1997-1998 and were indicted primarily for conduct they engaged in after their departure, and (v) other counterclaims and defenses, none of which were or could have been considered in the *Stein* criminal proceedings.

These deficiencies are not cured by the Court's attempt to limit the civil proceeding to consideration of the *Stein* Defendants' claim to advancement,  but are exacerbated

by it.  The Court is considering claims for payment from KPMG – claims that seek to impose liability on KPMG potentially amounting to tens of millions of dollars – without giving KPMG its day in court.  When asserted by former partners and employees, moreover, such a claim clearly is subject to the controlling arbitration provisions, regardless of whether it is styled as one for declaratory judgment, advancement, indemnification, or damages.

KPMG's rights also will be violated if the Court imposes on it any of the legal or factual findings in the June 26 Opinion, as KPMG was not a party to that criminal proceeding, and could not call or cross-examine witnesses or obtain discovery in that proceeding, or even review all the evidence in the record.  Moreover, the record in the *Stein* proceeding includes only those items the Defendants and the government selected to put before the Court, making it wholly inadequate to resolve any claims by Defendants against KPMG.  Accordingly, these findings are not binding on KPMG.

The Court's declaration of ancillary jurisdiction, and the Complaint itself, rest almost entirely on one such unsupported finding: that "[a]bsent the Thompson Memorandum and the actions of the [United States Attorneys' Office], KPMG would have paid the legal fees and expenses of all of its partners and employees both prior to and after indictment, without regard to cost." (June 26 Op. at 33; *see also* Complaint ¶ 2 ("Plaintiffs bring this action pursuant to the Court's findings . . . that KPMG would have advanced legal fees and expenses to Plaintiffs but for unconstitutional interference with KPMG's practice and policy of advancing such expenses by the [United States Attorneys Office]. . . .").)  In fact, no witness in the criminal proceeding was asked the hypothetical question of what KPMG would have done "[a]bsent the Thompson Memorandum and the actions of" the United States Attorneys' Office.  Nor is there any evidence

4

in the record from which one could fairly draw a conclusion on this point. Yet, this finding is the linchpin for the Court's assertion of ancillary jurisdiction.

Moreover, by law and by contract, KPMG is free to decide on a case-by-case basis whether and in what circumstances it will advance legal fees to present and former personnel.[3] Therefore, the relevant question is not a hypothetical one about what KPMG would have done two years ago under different circumstances. The determinative question is how it chooses today to exercise the discretion it clearly has with respect to advancement of fees.

Had evidence been adduced on this point, it would show that, post-indictment, KPMG would not in any event advance legal fees for the criminal defense of individuals who breached their fiduciary duties to the partnership and were indicted, thereby putting the future of the firm and its assets at risk. KPMG has determined that it is not in the best interests of the firm to advance post-indictment attorneys' fees to the Defendants in the *Stein* prosecution, and no civil claim by the Defendants should be allowed to alter this determination.

Further, KPMG cannot be said to have a "practice and policy" of advancing unlimited legal fees to pay for the post-indictment criminal defense of individuals who engaged in wrongdoing so extensive that it caused the firm to enter into a Deferred Prosecution Agreement, pursuant to which the partnership committed to pay $456 million in criminal fines and penalties. To the contrary, given the number of individuals who have been indicted and the damage to the firm as a result of the conduct alleged in *U.S. v. Stein*, there simply was no policy,

---

[3]     Indeed, the *Stein* Defendants acknowledged this in their papers filed in the criminal case, where they took the position that the government had improperly pressured KPMG such that it "did not exercise [its] freedom of choice" to advance legal expenses to them. (*See* January 12 Motion at 10 n.1, 19.) If KPMG had been legally bound to advance fees, the Thompson Memorandum by its own terms would not have required KPMG to accede to that asserted pressure. *See* Principles of Federal Prosecution of Business Organizations (the "Thompson Memorandum") § VI, ¶B, n. 4 (Jan. 20, 2003).

practice, or legal obligation that compelled KPMG to provide legal fees to these Defendants once they were indicted, and there is no basis upon which to conclude the firm would do so now "[a]bsent the Thompson Memorandum and the actions of" the United States Attorneys' Office.

It also should be noted that any urgency to the Defendants' advancement claims is entirely of their own making and does not warrant depriving KPMG of its constitutional and procedural rights by implementing an expedited process here. All sixteen (16) Defendants have been on notice of KPMG's position with respect to criminal defense costs for more than two years. When they became partners or employees of KPMG, all sixteen (16) knowingly and voluntarily signed contracts that contained binding arbitration clauses. Ten (10) of the Defendants also signed a letter from KPMG counsel (the "Fee Letter") agreeing or acknowledging that it was within KPMG's sole discretion to advance attorneys fees and that KPMG reserved the right to cease payments or modify the conditions for payment at any time. Further, five (5) of the *Stein* Defendants signed agreements when they left the partnership that expressly released KPMG of any obligation to advance attorneys fees. Only one Defendant, Carl Hasting, filed a claim for advancement at any time before the Court's June 26 Opinion spurred them to do so, and the California court that reviewed Mr. Hasting's claim appropriately referred it to arbitration.

In sum, while the Court found that the government pressured KPMG into refusing to advance legal fees to these Defendants contrary to its own independent business judgment, the remedy cannot be now to pressure KPMG *to pay* fees post-indictment – fees it believes are not in the firm's best interest to pay – contrary to its own business judgment.[4]

---

[4] KPMG reserves its right to deny the allegations in the Complaint and to assert defenses to the Complaint, which it will set forth in its Answer, if any is required. In addition, KPMG expressly reserves the right to file counterclaims against some or all of the *Stein* Defendants

*(cont'd)*

## BACKGROUND

In order to place the arguments contained in this Memorandum in a complete and accurate context, KPMG offers the following information concerning the underlying criminal investigation, the *Stein* Defendants' employment history and contractual relations with KPMG, the prior advancement of legal fees in connection with the *Stein* prosecution, and the proceedings that led to the June 26 Opinion.

**I.   DEFENDANTS' CONTRACTS WITH KPMG AND KPMG'S PAYMENT OF CRIMINAL DEFENSE EXPENSES PRIOR TO INDICTMENT**

In February and March 2004, KPMG learned that the firm and approximately 25 former or then-current KPMG personnel were subjects of a criminal grand jury investigation. On August 26, 2005, KPMG entered into a Deferred Prosecution Agreement ("DPA"), pursuant to which it agreed to pay $456 million in criminal fines and penalties.  (Ex. 1.)  On October 17, 2005, the government filed a 46-count Superseding Indictment against 19 individuals, including the claimants here.  (Ex. 2.)   The indictment charged all the individual defendants with participating in a conspiracy to defraud the Internal Revenue Service by devising, marketing, and implementing fraudulent tax shelters, by preparing and filing false and fraudulent income tax returns, and by fraudulently concealing the tax shelters from the IRS.   According to the indictment, these activities caused a tax loss to the United States Treasury of more than $2 billion.  In addition, the indictment charged several individuals, including Messrs. Larson, Pfaff, Ritchie, and Rosenthal, with evasion of their own taxes.

When KPMG first learned that both the firm itself and a significant number of KPMG personnel were subjects of this investigation, KPMG offered to advance attorneys fees to

_____

*(cont'd from previous page)*
    if this Court does not grant this motion.

these individuals, subject to three conditions: (i) the individual "must cooperate with the government and that cooperation must be prompt, complete, and truthful"; (ii) payment of the individual's fees and expenses would be subject to the KPMG billing guidelines and would be capped at $400,000, a cap which would be extended in KPMG's sole discretion and upon a showing of extraordinary circumstances; and (iii) payment of legal fees and expenses would cease if the individual was not cooperating, reached the cap, or was charged with criminal wrongdoing. These conditions were set forth in letters from KPMG counsel to certain KPMG personnel. (*See* Fee Letter; Ex. 3.)

The June 26 Opinion states that "KPMG paid attorneys' fees prior to indictment for *all* of the KPMG Defendants on condition that the employees cooperate with the government." (June 26 Op. at 67) (emphasis added).) The Complaint, by contrast, suggests that KPMG refused to advance any fees to the *Stein* Defendants. (Complaint ¶ 1.) Neither is accurate. In fact, KPMG advanced pre-indictment legal fees for representation in the criminal investigation for eleven (11) of the sixteen (16) *Stein* Defendants.[5] It did not pay for the others, however, either because the firm had already determined that their conduct constituted a serious breach of the duty to the partnership, and/or because they had long ago left the firm or did not ask for their fees to be advanced.

All but one of the *Stein* Defendants were at one time or another members of the partnership of KPMG, whose relationship with the partnership was governed by the KPMG Partnership Agreement. (*See* P'ship Agmt. and relevant signature pages; Ex. 4.) One of them

---

[5] KPMG advanced pre-indictment legal fees to Messrs. Bickham, DeLap, Gremminger, Hasting, Lanning, Rosenthal, Smith, Stein, Watson and Wiesner and Ms. Warley. KPMG offered to advance pre-indictment legal fees to Mr. Eischeid but Mr. Eischeid declined the offer in March 2004.

(Mr. Larson) was a Senior Manager, whose relationship with the partnership was governed by the KPMG Senior Manager Agreement.  Messrs. Bickham and Hasting were parties to Senior Manager Agreements before entering into the Partnership Agreement.  (*See* Sr. Mngr. Agmt. and relevant signature pages; Ex. 5.)  Both agreements contain binding arbitration and merger clauses.

Ten (10) of the Defendants also signed the Fee Letter agreeing or acknowledging that "KPMG's decision to pay . . . legal fees and expenses is made in its sole discretion, and KPMG reserves the right to cease the payments or to modify the conditions for the payment at any time for any reason."[6]

Significantly, five (5) of the *Stein* Defendants also signed agreements when they left the partnership that relieved KPMG of any obligation to advance legal fees.  Specifically:

- **David Greenberg** resigned from KPMG in February 2003.   In connection with his resignation, Mr. Greenberg on September 5, 2003, signed a settlement agreement which released KPMG from

    > any and all causes of action, actions, judgments, liens, debts, contracts, indebtedness, damages, losses, claims, liabilities, rights, interests and demands, known or unknown, suspected to exist or not suspected to exist, anticipated or unanticipated, whether or not heretofore brought before any state or federal court or before any state or federal agency or other governmental entity, which Greenberg has or may have against any released person or entity by reason of any and all acts, omissions, events or facts occurring or existing prior to the date hereof. . . .

    (Greenberg Settlement Agmt. ¶ 8; Ex. 6.)  The agreement further states that "*Greenberg will bear. . . his own costs and attorneys' fees*, if any, which may have been incurred with respect to any matter released in this Agreement." (*Id.* ¶ 14 (emphasis added).)

- **Philip Wiesner** withdrew from the Partnership and executed a Withdrawal Agreement in January 2004, which provided that "Partner and each of the Partnership Released Parties shall have no further monetary or other obligation of any kind to Partner, including any

---

[6] (Ex. 3.)  Everyone identified in note 5, *supra*, as having been advanced fees signed the Fee Letter, save Mr. Stein, who had a separate agreement.

obligation for any costs, expenses, and *attorneys' fees* incurred by or on behalf of partner." (Wiesner Withdrawal Agmt. ¶ 6(a); Ex. 7 (emphasis added).)

- **Jeffrey Eischeid** refused to sign the Fee Letter. He did, however, execute a Withdrawal Agreement in May 2004 containing a release identical to that in the Wiesner Withdrawal Agreement. (Ex. 8.)

- **Carol Warley** signed the Fee Letter in March 2004, and KPMG advanced attorneys' fees to her in connection with the criminal investigation until KPMG learned in November 2004 that Ms. Warley had refused to testify before a grand jury, at which point KPMG ceased payment of those fees and took steps to remove Ms. Warley from the partnership. Before Ms. Warley signed the Fee Letter, her counsel advised KPMG's counsel that she agreed "that the first two [conditions set forth in the Fee Letter] are appropriate under the circumstances." (Letter from John Townsend, Esq. to Robert Bennett, Esq. (March 19, 2004); Ex. 9). In December 2004, she signed a Withdrawal Agreement (Ex. 10) that contains language identical to that in the Wiesner Withdrawal Agreement expressly releasing KPMG from any obligation to pay her legal fees.

- In June 2004 **Richard Rosenthal** executed a Withdrawal Agreement which contained specific provisions regarding *indemnification or reimbursement* but not advancement of attorney's fees. (*See* Rosenthal Withdrawal Agmt. ¶¶ 6-7; Ex. 11.) The provision regarding indemnification unequivocally states that KPMG has no obligation to indemnify Mr. Rosenthal for the costs of defending any criminal investigation in which Mr. Rosenthal was identified as a subject or target. (*See id*. ¶ 7.) As noted above, Mr. Rosenthal was charged not only with conspiring to evade taxes of his clients but also his own taxes.

    It is also noteworthy that several of the Defendants left the firm years before the

criminal investigation began, and asked KPMG to pay their fees only belatedly:

- **John Larson** and **Robert Pfaff** did not ask KPMG to advance their attorneys' fees until two months ago. KPMG never contemplated paying their attorneys' fees, as Messrs. Larson and Pfaff, who left the firm in 1997, were being investigated for conduct subsequent to their tenure at KPMG. Given that Messrs. Larson and Pfaff are alleged to have made more than $149 million peddling tax shelters and to have evaded their own taxes after they left KPMG, they hardly would have presented a compelling case had they sought advancement of attorneys' fees from KPMG.

- **Gregg Ritchie** left KPMG in 1998 to become CFO of a firm called Pacific Capital Group ("PCG"). Mr. Ritchie did not ask KPMG to pay any of his criminal defense fees until July 26, 2005, and KPMG declined to make advancement, in part, because it understood that Mr. Ritchie was being investigated primarily for conduct unrelated to his tenure at KPMG. In addition, Mr. Ritchie is charged with evasion of taxes on the income he made as an employee of PCG. KPMG also understood that PCG was making payments in connection with Mr. Ritchie's fees.

Finally, pursuant to a January 2004 severance agreement, KPMG advanced attorneys' fees in the criminal investigation to **Jeffrey Stein** until May 2005, at which point KPMG determined that it would no longer advance fees to him. Because he had signed a severance agreement, Mr. Stein was not asked to sign the Fee Letter. Mr. Stein's severance agreement contains a binding arbitration clause governing all disputes arising under it. (*See* Stein Separation Agmt. ¶ 24; Ex. 12.)

Notwithstanding that the *Stein* Defendants were informed more than two years ago that KPMG would not advance their post-indictment attorneys' fees, only one of them, **Carl Hasting**, filed a claim against KPMG. Mr. Hasting's claim, filed in California state court in September 2005, one month before he was indicted, raised the same claims for advancement under California labor law that he and several other Defendants raise here. That court concluded that Mr. Hasting's claims were required to be submitted to arbitration in accordance with the arbitration provision in the KPMG Partnership Agreement and ordered that "[t]his entire action [be] stayed pending arbitration." *Hasting v. KPMG LLP*, No. BC 340378, slip op. at 15 (Cal. Super. Ct. Feb. 08, 2006) (unpublished) (attached).[7]

## II.    KPMG'S ROLE IN THE PROCEEDINGS LEADING TO THE COURT'S JUNE 26 OPINION IN *U.S. V. STEIN*

The process by which KPMG has been made a party to this ancillary proceeding violates KPMG's rights. A review of the chronology of the *Stein* proceedings underscores that conclusion.

---

[7]    After exchange of discovery, the parties were scheduled to conduct the arbitration in early August. Recently, however, the arbitrators postponed the arbitration, and on June 28, 2006, the California court set an hearing on this matter, currently scheduled to take place on August 2.

**A.    The Motion to Remedy the Violation of Defendants' Constitutional Rights**

On January 12, 2006, certain of the criminal defendants filed a "Motion to Remedy the Violation of Defendants' Constitutional Rights to Counsel and a Fair Trial Resulting from the Prosecutors' Wrongful Interference with Defendants' Ability to Obtain Advancement of Legal Fees from KPMG" (the "January 12 Motion").  Other of the Defendants soon joined or filed similar motions.  They alleged that their rights were violated because the U.S. Attorney's Office for the Southern District of New York, through the Thompson Memorandum, threatened to deem KPMG non-cooperative with the government if it paid legal fees for its present and former personnel, thereby pressuring KPMG to stop funding their criminal defense expenses.  The Motion, which was directed to the government, asked the Court to dismiss the indictment or order the advance payment of their legal fees.  As KPMG was not a party to the criminal proceeding, ***neither the Motion nor any Oppositions or Replies thereto were served on KPMG.***

At a hearing on March 30, 2006 -- in which KPMG did not participate – counsel for one of the *Stein* Defendants suggested that the Court might redress the alleged constitutional violation by issuing "a directive that the legal fees of defendants be advanced."  The Court correctly responded that it could not issue such an order to KPMG: "How can I possibly do that when the party you are seeking to have pay the money is not even a party to the lawsuit. . . . [D]on't you think that there would be a constitutional violation if a court in the United States ordered somebody who is not a party to the action, was never served with process, has had no opportunity to appear or resist the order, is simply ordered to pay money?"  (Hrg. Tr. 15:24-16:10 (Mar. 30, 2006).)

The *Stein* Defendants' proposed solution, as voiced by counsel at the hearing, was to order ***the government*** to pay their legal fees out of the funds due to it from KPMG pursuant to the DPA.  (*Id.* at 16:12-21.)  Defense counsel also conceded at that time that there was no

12

evidence that KPMG was contractually obligated to pay the Defendants' legal fees.  (*Id.* at 17:17-19.)[8]  ***Thus, as of March 30, 2006, there was nothing to suggest that a remedy was being sought, or could be sought, from KPMG.***

On April 27, 2006, the *Stein* Defendants filed a Supplemental Memorandum of Law suggesting for the first time that the Court might have ancillary jurisdiction to order KPMG to pay their fees.  They also suggested in a footnote that KPMG might be liable under some unspecified *Bivens* theory.  ***Once again, KPMG was not named as a party; nor was it served with these papers.***  The government filed a supplemental response as well, and KPMG was not served.

KPMG had no involvement in the proceedings until April 17, 2006 when it was served with a Rule 17(c) third-party subpoena for documents primarily concerning its counsel's communications with the government about payment of legal fees and, to some extent, the history of the payment of legal fees for its personnel.  Outside counsel for KPMG, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), entered an appearance in connection with resolving discovery disputes arising from the subpoena.  KPMG produced documents responsive to the subpoena in late April and early May 2006.

**B.      The Hearing on the Motion**

On May 8-10, 2006, the Court held an evidentiary hearing on Defendants' January 12 Motion.  Seven current or former KPMG partners, including its Chairman Timothy

---

[8]      Ronald DePetris, counsel for defendant Wiesner, stated that while the defense had not yet seen KPMG's bylaws, "I can't say to your Honor, based on what we know now, that they [KPMG] have a legal obligation to do it.  The wrongful conduct here on this issue was by the government, not by KPMG.  It was the wrongful interference with KPMG's ***freedom of choice***." (*Id.* at 17:24-18:4 (emphasis added).)  A review of KPMG's bylaws confirms his conclusion was correct, as they do not address, let alone mandate, advancement or indemnification.

Flynn, and six attorneys at Skadden were subpoenaed by the Defendants to testify at this hearing. In the end, Defendants called only one KPMG witness they had subpoenaed – KPMG's General Counsel Joseph Loonan – and only three subpoenaed Skadden witnesses.[9]  The parties -- the Defendants and the government – engaged in direct examination and cross-examination of these witnesses.    The parties also introduced exhibits, including documents produced by the government and the Defendants as well as documents that KPMG had produced.  As a non-party, KPMG did not examine witnesses or call witnesses.  As a non-party, KPMG did not obtain discovery or introduce exhibits or other evidence.  KPMG was not even provided copies of the exhibits introduced by the parties.

Significantly, neither Mr. Loonan nor any of the other available KPMG-related witnesses was asked by either party the hypothetical question of whether KPMG would have advanced legal fees to indicted employees and partners "[a]bsent the Thompson Memorandum and the actions of the" United States Attorney's Office.  More importantly, for purposes of the issue here, nobody asked about KPMG's current position regarding advancement of attorneys' fees to the Defendants.  There was no other evidence in the record to support any findings in either regard.

On the first day of the hearing, Charles Stillman of the Stillman, Friedman & Shechtman law firm, an outside counsel for KPMG, attended the hearing, but only because KPMG witnesses were there under subpoena.  In the midst of the hearing, the Court addressed the following remarks to him:

> I am sure it has not escaped the notice of KPMG that the defendants are seeking a remedy against KPMG, and I wanted to make clear that I will give you an

---

[9]    The *Stein* Defendants also called one of the prosecutors and an IRS agent.  The government called one additional prosecutor.

opportunity to brief that when this is done and to address it *at the close of the proof or later*, just so that you're aware of that.

(Hrg. Tr. at 157: 13-17 (May 8-10, 2006) (emphasis added).)  This was the first time there was any suggestion that the Court was even considering calling on KPMG to redress the government's asserted violation of the Defendants' constitutional rights.  Mr. Stillman responded that KPMG was not a party to the dispute at hand.  The Court replied: "I assumed that might be one of the points you would discuss."  (*Id*. at 157:20-21.)

On the final day of the hearing, the Court *sua sponte* raised the question of whether KPMG had breached some implied-in-fact contract with the Defendants to pay for their criminal defense.  Up until this point, no Defendant had advanced any such claim or even suggested such a theory.  Then, without prior notice, the Court directed the following comments to Mr. Stillman:

> You certainly have noticed that a remedy is being sought against your client, and now I'm making it clear in words of one syllable.  You will have a chance to be heard if you want it.

(*Id*. at 426:24-427:2.)  The Court then permitted Mr. Stillman to address the Court "without prejudice."  (*Id*. at 427:7-8.)  He responded, in part, as follows:

> KPMG . . . has not and is not a party to this proceeding.  You're a distinguished federal judge.  You're asking me on behalf of my client to submit something on an issue that's before you.  I am not going to say no to that. . . .  I want to say this . . . the fact of the matter is that if [a defendant] has a beef with KPMG with respect to some contractual right that he has, he ain't in the right place, because the contract that he would want to rely upon has an arbitration provision in it.

(*Id*. at 427:21-428:11.)  Following Mr. Stillman's comments, the Court stated:

> Look, let's be absolutely clear.  Arguments are made on behalf of defendants who've made this motion, some of them, that I should enter, in effect, a judgment against your client.  The first time that was tendered to me, I really thought it was kind of a joke. . . .
>
> Subsequently to that, counsel have brought to my attention a very recent Second Circuit case that said I have ancillary jurisdiction . . . to decide in a

15

criminal case fee disputes with nonparties; in that case, an attorney. Garcia against Tietler, I read it with great interest. And it seems to me it's at least, passingly relevant here.

(*Id.* at 429:11-24.)  The Court then invited KPMG to make a submission to provide the Court with "the benefit of whatever learning I can get on what I acknowledge are difficult, cutting edge questions," adding that KPMG could "make whatever reservation of rights you want in submitting" it. (*Id.* at 430:17-31.)

Thus, on May 22, 2006, the same day that the parties filed their post-hearing briefs, KPMG submitted a paper titled "Memorandum of Non-Party KPMG Submitted at the Invitation of the Court Regarding Certain Issues Relating to Defendants' Fee Advancement Motion," which argued that the Court did not have ancillary jurisdiction and elucidated the law relating to the mandatory arbitration provisions in the Defendants' KPMG partnership contracts. The submission also stressed that as a non-party, KPMG had no opportunity to develop a factual record regarding any claims the Defendants might have that KPMG was legally obligated to pay for their criminal defense. Importantly, KPMG reminded the Court that it had advised KPMG that it could make a submission without prejudice to any rights it might have to contest jurisdiction or otherwise, and KPMG did reserve all its rights. (Memorandum of Non-Party KPMG at 2 n.1.)[10]

---

[10]  Because the Court had earlier suggested that any appearance by KPMG counsel might waive any right to contest personal jurisdiction, the submission was not styled or signed as a party's brief would be. The Court then issued an order directing KPMG to refile the submission as a memorandum "signed by a member of the Bar" with "a proper caption and index number . . . accompanied by proof of service," which KPMG did to comply with the Court's directive. (Order of May 25, 2006.)

III.    THE JUNE 26 OPINION

On June 26, 2006, the Court held in *U.S. v. Stein* that the government had violated the Defendants' Fifth and Sixth Amendment rights by "[c]ausing KPMG to cut off payment of legal fees and other legal costs upon indictment." (June 26 Op. at 39.)  The opinion made numerous conclusions of law pertaining to KPMG as well as findings of fact concerning KPMG's conduct and intent, which, however binding they might be on the parties to the criminal proceeding, cannot bind non-party KPMG.  If the Defendants' claims against KPMG are not dismissed, KPMG would contest many of these findings and conclusions, which are unsupported by the record, the facts, and the applicable law.

A.    The Opinion's Findings With Respect to KPMG's Payment of Legal Fees

Key among these was this:  "KPMG refused to pay [legal fees] because the government held the proverbial gun to its head.  *Had that pressure not been brought to bear, KPMG would have paid these defendants' legal expenses.*"  (*Id.* at 2 (emphasis added).)  Similarly, the Court concluded that "[a]bsent the Thompson Memorandum and the actions of the USAO, KPMG would have paid the legal fees and expenses of all of its partners and employees both prior to and *after indictment*, without regard to cost."  (*Id.* at 33 (emphasis added).)

No KPMG witness was asked what KPMG would have done or would do in this unprecedented situation.  Accordingly, there simply was no evidence in the record in *U.S. v. Stein* to support the Court's finding that, "[a]bsent the Thompson Memorandum and the actions of the USAO" KPMG would have advanced criminal defense fees to these Defendants.  More importantly, for purposes of the current issue, there is no evidence whatsoever to support any finding that KPMG would advance legal fees post-indictment to defendants who breached their fiduciary duties to the partnership.

17

Similarly, the Court concluded that KPMG has a long-standing "policy" (*id.* at 9), pursuant to which the criminal defendants may be "entitled" to the payment of legal fees (*id.* at 2). In reaching this conclusion, the Court relied on a stipulation, entered into between the government and the *Stein* Defendants, concerning certain aspects of KPMG's past practices regarding payment of attorneys' fees (the "Stipulation"). Although KPMG does not dispute the Stipulation as far as it goes, the Stipulation does not provide a complete picture. Most importantly, it does not support the conclusions the Court has drawn from it.

The Stipulation states as follows:

> 1. Prior to February 2004, notwithstanding the ***absence of a written policy***, it had been the longstanding ***voluntary practice*** of KPMG to advance and pay legal fees, without a preset cap or condition of cooperation with the government, for counsel for partners, principals, and employees of the firm in those situations where separate counsel was appropriate to represent the individual in any civil, criminal or regulatory proceeding involving activities arising within the scope of the individual's duties and responsibilities as a KPMG partner, principal, or employee.

> 2. This practice was followed without regard to economic costs or considerations with respect to individuals or the firm.

> 3. With the exception of the instant matter, KPMG is not aware of any current or former partner, principal, or employee who has been indicted for conduct arising within the scope of the individual's duties and responsibilities as a KPMG partner, principal, or employee since Anthony M. Natelli and Joseph Scansaroli were indicted and convicted of violation of federal criminal law in 1974. Although KPMG has located no documents regarding payment of legal fees in that case, KPMG believes that it did pay pre- and post-indictment legal fees for the individuals in that case.

(June 26 Op. at 9-10 (quoting Stipulation) (elided words included and emphasis added).)

For several reasons, this does not support a finding that KPMG had a longstanding, unbroken policy to pay unlimited legal fees for criminal defendants.

*First*, as the *Stein* Defendants acknowledged by signing the Stipulation, KPMG had ***no policy*** regarding the payment of attorneys' fees for firm personnel – it only had a practice of doing so.

*Second*, the Stipulation recognized that KPMG had ***no obligation*** to pay attorneys' fees for firm personnel, and that its decision to do so was "***voluntary***," as the Stipulation states.

*Third*, as the Stipulation makes clear, the only time KPMG had ever exercised its discretion to advance legal fees to charged criminal defendants arose more than 30 years ago, in a case involving only two individuals. Since that time, the firm has had no occasion to consider whether to advance fees to indicted individuals, and it has never had the occasion to consider whether to advance fees in a criminal case such as this where more than a dozen KPMG personnel were indicted. Accordingly, there was ***no precedent*** for KPMG to look to in determining whether to advance legal fees in this criminal investigation, and, if so, subject to what conditions.

Likewise, the fact that KPMG historically has advanced fees in civil proceedings does not evidence a contractual obligation, or even a policy, of doing so in connection with criminal defense costs. In the instant case, for example, in exercising its discretion to pay fees on a case-by-case basis, KPMG has determined, to protect the interests of the firm, to advance legal fees in certain on-going civil lawsuits pertaining to the tax shelters, including to some of the *Stein* Defendants. There is nothing about this determination that should create an expectation or a contractual right that KPMG would also advance criminal defense fees in this case.

Given that KPMG had never paid post-indictment legal fees since the 1974 case, there was no basis for the statement in the June 26 Opinion that the Defendants had "every

reason to expect that KPMG would pay their legal expenses in connection with the government's investigation and, if they were indicted, defending against any charges that arose out of their employment by KPMG." (June 26 Op. at 38.) The evidence is to the contrary, for, as KPMG General Counsel Joseph Loonan testified:

> [i]n every discussion I've ever had with counsel for a withdrawing member from the firm, I have made it very clear that the firm does not have an obligation to pay for their attorneys' fees. I point out that there is no obligation in the partnership agreement, and I point out that on the Delaware limited liability partnership law, there is no obligation. What I have also said to people is that the firm has a practice in the past of paying for attorneys' fees, but that I also indicate that that is no guarantee that that practice will continue. Indeed, where I say that we will pay for attorneys' fees, I'm always careful to say, and that if the policy or practice is changed, we will pay for the fees incurred up to the date of notification of the change in policy.

(Hrg. Tr. at 173:21-174:9 (May 8-10, 2006).)

The Court, moreover, did not have before it all the evidence that would be germane to a determination about the reasonableness of each Defendant's expectations in this regard. For example, it did not have any testimony from any Defendant on this point. Nor, to the best of KPMG's knowledge, did the Defendants put before the Court the evidence pertaining to the agreements that five (5) of them signed agreements releasing KPMG of any obligation to advance legal fees in the criminal case. Nor does it appear that the Court was directed to the fact that several of the Defendants had not even been partners or employees of KPMG since 1997-1998. Such evidence, among other things, would undercut the finding that the Defendants' expectations as to advancement were reasonable.

In sum, KPMG has had almost no experience in advancing fees to indicted defendants in criminal matters, and it was not reasonable for any of the *Stein* Defendants to expect it would do so here.

20

**B.    The Opinion's Characterization of KPMG's Role In the Proceedings**

The June 26 Opinion also intimates that KPMG had an opportunity to develop a factual record regarding the above findings as if it were a party, but failed to take advantage of it. (*See* June 26 Op. at 31 ("KPMG ultimately submitted a memorandum of law.  It did not seek to offer any evidence, to question any witnesses, or to make any offer of proof.").)   Any such suggestion is without foundation.  As the chronology above shows, the Court simply requested that KPMG make a submission to provide the Court "with the benefit of whatever learning I can get on what I acknowledge are difficult cutting edge questions." (Hrg. Tr. at 427:1-2, 430:17-19 (May 8-10, 2006).)  Further, the Court specifically limited KPMG's participation to a time "at the close of proof or later." (*Id.* at 157:16-17.)  Consistent with KPMG's status as a non-party, the Court never informed KPMG, or even hinted, that it could call witnesses, cross-examine witnesses called by the parties, obtain discovery or introduce evidence.   The Court never suggested that the evidence introduced by the parties (whether by the *Stein* Defendants at the hearing or by the government in response to the subpoenas) could be made available to KPMG. There would be no basis in the Federal Rules of Criminal Procedure for the Court to permit a non-party such as KPMG to issue discovery requests, call or cross examine witnesses, or offer evidence in a criminal proceeding, and KPMG did not have any opportunity to do so.

The June 26 Opinion likewise acknowledges that KPMG was not a party to the proceedings, but curiously modifies that acknowledgement to suggest its status as a non-party was not relevant:  "KPMG, which is not formally a party here . . . has been heard in any case . . . ." (June 26 Op. at 73.)  There is no such creature under the Federal Rules of Criminal Procedure as an "informal party."  One either is a party to the action or not, and as the Court stated during the course of the proceedings, KPMG was not a party.  (Hrg. Tr. at 15:24-16:1 (March 30, 2006).)

21

## SUMMARY OF ARGUMENT

The *Stein* Defendants' claims should be dismissed for the following reasons:

The Court lacks subject matter jurisdiction because the advancement claims are all subject to arbitration:  All of the *Stein* Defendants voluntarily signed the KPMG Partnership Agreement and/or Senior Manager Agreement, thereby expressly agreeing to arbitrate any claims between themselves and KPMG.  In light of the clear agreement to arbitrate, which encompasses the instant advancement claims, the Federal Arbitration Act compels the Court to dismiss the action for lack of subject matter jurisdiction or, alternatively, to compel arbitration and stay the subject civil claims during the pendency of the arbitration.  Given that denial of a motion to compel arbitration is immediately appealable, *see* 9 U.S.C. § 16(a)(1)(C) (2006); *CPR (USA) Inc. v. Spray*, 187 F.3d 245, 252 (2d Cir. 1999), KPMG respectfully submits that conservation of the resources of the Court and the parties counsels in favor of addressing this threshold issue first.

The Court also lacks ancillary jurisdiction over the substantive claims against KPMG for advancement of fees:  The exercise of criminal ancillary jurisdiction here exceeds the constitutional limits on this exceptional form of jurisdiction. The instant complaint is beyond the scope of the Court's authority stemming from its inherent power to manage its own affairs, as it involves a state law contract dispute with KPMG, a non-party in the criminal proceeding, and because it involves claims and facts that are distinct from the criminal prosecution.  The primary case on which the Court relied in its June 26 Opinion, *Garcia v. Teitler*, 443 F.3d 202 (2d Cir. 2006), involved the exercise of ancillary jurisdiction over an officer of the court who had appeared on behalf of a party in the very criminal proceeding in which the Court was exercising such jurisdiction, and did not address the constitutional concerns inherent in extending ancillary jurisdiction to non-parties.  The other case relied upon by the Court, *United States v. Weissman*,

22

No. S2 94 CR. 760 (CSH), 1997 WL 334966 (S.D.N.Y. June 16, 1997), has been rejected by other courts for failing to recognize the constitutional and statutory limits on criminal ancillary jurisdiction. *Weissman* in any event is readily distinguishable, because adjudicating the ancillary claim there required only answering a straightforward question of law, not the myriad legal and factual issues that would be present here. Even if the advancement claim here could be said to properly fall within the Court's ancillary jurisdiction, the Court should decline to exercise such jurisdiction on grounds that to do so would be fundamentally unfair to KPMG.

The *Stein* Defendants fail to state a claim upon which relief can be granted: As noted above, the Court is without jurisdiction to adjudicate the *Stein* Defendants' claims for advancement. If the Court were nonetheless to proceed to entertain them, their claim based on implied contract should be dismissed pursuant to Rule 12(b)(6). Given the absence of any Delaware statutory obligation of KPMG to advance fees, the lack of any express obligation to do so in the Partnership Agreement, and the lack of any cognizable basis to imply any contractual obligation, the Defendants' collective claim for breach of an implied contract right must be dismissed as a matter of law. The law is well-settled that one cannot maintain a claim based on an implied contract theory where there exists a written contract governing the same subject matter. In this case, the Partnership Agreement and other controlling agreements contain broad merger clauses that make clear that any and all rights and benefits of the parties are reflected within the four corners of the written instrument, and no other place. (*See* P'ship Agmt. §19.6; Ex. 4.)

**ARGUMENT**

## I. BECAUSE THE *STEIN* DEFENDANTS VOLUNTARILY AGREED TO ARBITRATE ANY CLAIMS BETWEEN THEMSELVES AND KPMG, FEDERAL LAW REQUIRES THEM TO DO SO NOW

The *Stein* Defendants are sophisticated professionals, each of whom entered into a Partnership or Manager Agreement with KPMG.[11] For varying, but in all cases considerable, lengths of time, the Defendants reaped substantial benefits from their affiliation with the partnership through these contracts. Now, they seek to disavow a key provision of those Agreements.

Specifically, the KPMG Partnership Agreement, provides:

> *Any dispute* between the Firm and any Member or Separated Member or between or among Members or Separated Members *arising out of or relating to the Firm* or the accounts or transactions thereof or the dissolution or winding up thereof, *the construction, meaning or effect of any provision of this Agreement*, or the rights or liabilities of a Member or Separated Member or such Member's or Separated Member's representatives ("Disputes"), *shall be* submitted for resolution by arbitration in accordance with the procedures set forth in this Section 17. All arbitrations hereunder shall be held either in the State and City of New York or in Wilmington, Delaware.

---

[11] Fifteen of the *Stein* Defendants entered into the Partnership Agreement. (Ex. 4.) Two of them (Messrs. Hasting and Bickham) also entered into Senior Manager Agreements before entering into the Partnership Agreement. Mr. Larson also entered into a Senior Manager Agreement. (Ex. 5.) The Partnership Agreement is expressly referenced in the *Stein* Complaint. Moreover, it and the Senior Manager Agreements are raised by implication in the Complaint by virtue of the *Stein* Defendants' allegations of entitlement to advancement flowing from their employment relationship with the partnership. The proper construction of these agreements therefore lies at the heart of the instant dispute. Accordingly, it is appropriate for the Court to consider both agreements in the course of ruling on KPMG's Motion to Dismiss. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69 (Del. 1995) (observing that the practice of considering outside documents in ruling on a motion to dismiss "has been viewed and justified by the federal courts as a necessary, but limited, exception to the standard Rule 12(b)(6) procedure" and "used in cases in which the document is integral to a plaintiff's claim and incorporated in the complaint, . . .") (citing *Cortec Indus. Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

(Ex. 4 (emphasis added)).[12]    The instant Complaint indisputably involves claims "arising out of or relating to the Firm," as well as "the construction, meaning or effect of . . . provision[s] of [the Partnership] Agreement."    Consequently, this Court cannot and should not allow the *Stein* Defendants so casually to dismiss their binding obligation to arbitrate claims against KPMG.

The Federal Arbitration Act ("FAA") governs agreements to arbitrate disputes "arising out of" contracts that affect interstate commerce. 9 U.S.C. § 2 (2006).  As this Court has previously held, Partnership agreements are contracts that affect interstate commerce and therefore are subject to the FAA. *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 371 F. Supp. 2d 571, 574 (S.D.N.Y. 2005) ("As an agreement affecting interstate commerce, the Partnership Agreement is subject to the [FAA]."); *see also Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88 (2d Cir. 1999) (enforcing arbitration provision in partnership agreements).

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA embodies a "liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983).  The Act was intended "to revers[e] centuries of judicial hostility to arbitration agreements," by "plac[ing] arbitration agreements upon the same footing

---

[12]    The Senior Manager Agreement (see Ex. 5) also contains a binding arbitration agreement, which provides in relevant part: "[A]ny claim or controversy arising out of or relating to this Agreement or the breach thereof, . . . or any claim or controversy that in any way relates to the terms and conditions of KPMG's employment of Senior Manager, shall be settled exclusively by arbitration . . . ." (Sr. Mngr. Agmt. ¶ 14; Ex. 5.)  Likewise paragraph 24 of the Stein Severance Agreement (Ex. 12) states as follows: "Any dispute arising under this Agreement shall be resolved in accordance with the provisions of Section 17 of the Partnership Agreement, which provisions hereby are incorporated herein by reference."

as other contracts." *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 225-226, 107 S. Ct. 2332, 2337 (1987) (alterations in original) (citations and internal quotations omitted). The FAA thus provides that if "any suit or proceeding . . . brought in any of the courts of the United States" presents "*any issue*[] referable to arbitration," a district court must stay its proceedings pending arbitration at the request of either party. 9 U.S.C. § 3 (2006) (emphasis added).

In determining whether a claim is subject to arbitration, a court need only determine whether (i) the "parties agreed to arbitrate," and (ii) the "scope of [that] agreement encompasses the claims" at issue. *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005) (alteration in original) (internal quotations omitted). This is a question of federal substantive law. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. ___, 126 S. Ct. 1204, 1208-09 (2006). As the party attempting to avoid arbitration, the *Stein* Defendants bear the burden of proving that the arbitration provision does not apply to their claims. *See ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 684 (2d Cir. 1996) ("We will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (internal quotations omitted).

A.    **The *Stein* Defendants Voluntarily Agreed To Arbitrate Their Claims**

The *Stein* Defendants do not dispute that they signed the Partnership or Senior Manager Agreements; nor do they suggest that other KPMG partners concealed the arbitration provision or otherwise duped them into signing these agreements without understanding that they would be required to arbitrate any disputes with the firm. Indeed, the *Stein* Defendants expressly rely on the Partnership Agreement in their first cause of action. The Partnership Agreement is a contract among equals—sophisticated professionals—and therefore binding upon the *Stein* Defendants.

**B.    The Arbitrability Of The *Stein* Defendants' Claims Must Be Decided By An Arbitrator In The First Instance**

Although courts generally retain the authority to determine whether a claim is subject to arbitration, where (as here) an arbitration provision states that it applies to "any dispute . . . relating to . . . the construction, meaning or effect of any provision of th[e] Agreement" (P'ship Agmt. at ¶17; Ex. 4), courts have found such language to be clear and convincing evidence that the parties to the arbitration provision also intended to confer the threshold issue of arbitrability to an arbitrator. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198-1200 (2d Cir. 1996) (identifying the "clear and convincing" standard and factors demonstrating that it has been met). Indeed, as this Court has previously explained, "[a]n arbitration clause . . . does not need to be unlimited in order sufficiently to evidence the parties' intent to arbitrate questions of arbitrability." *Fraternity Fund Ltd.*, 371 F. Supp. 2d at 575 (finding partnership agreement assigned question of arbitrability to the arbitrator and compelling arbitration). Thus, the Court need not make a specific determination that any or all of the *Stein* Defendants' theories for recovery are arbitrable; the Court need only find that the broad language in the applicable arbitration provisions demonstrates the *Stein* Defendants' agreement to resolve *any* dispute regarding their rights with respect to KPMG in arbitration. The arbitrator must then determine whether any or all of the *Stein* Defendants' claims fall within the scope of the arbitration provision.

**C.    The Arbitration Provisions In KPMG's Partnership And Other Agreements Apply To The Present Dispute**

If the Court determines that arbitrability is not for the arbitrator to decide, it should find that the *Stein* Defendants' claims easily fall within the scope of the arbitration provision. Where the arbitration provision is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of

27

contract construction or the parties' rights and obligations under it." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (citation and internal quotations omitted). Here, the arbitration provision in the Partnership Agreement covers "any dispute" between KPMG and the *Stein* Defendants "arising out of or relating to" KPMG, the "construction, meaning or effect of any provision of the Partnership Agreement," or the rights of the *Stein* Defendants vis-à-vis KPMG. The arbitration provisions in the Senior Managers' Agreement likewise encompasses "any claim . . . arising out of or relating to this Agreement" or "that in any way relates to the terms and conditions of KPMG's employment of Senior Managers." (Sr. Mgnr. Agmt. ¶ Fourteenth; Ex. 5.) The Second Circuit has repeatedly characterized as "broad" arbitration provisions with similar language. *See, e.g., JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) ("Any and all differences and disputes of whatsoever nature arising out of this Charter"); *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 649 (2d Cir. 2004) ("any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement"); *Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003) ("Any dispute, claim, grievance or difference arising out of or relating to the Agreement").

Because of the expansive reach this Court must give such arbitration provisions, "[i]f the allegations underlying [the *Stein* Defendants'] claims touch matters covered by the [KPMG agreement], then those claims *must* be arbitrated." *JLM Indus., Inc.*, 387 F.3d at 172 (first alteration in original) (emphasis added). Indeed, the Supreme Court has stated that, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."

*AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986) (alteration in original and internal quotations omitted).

The *Stein* Defendants' allegations fall squarely within the applicable arbitration provisions. They assert that KPMG's past practice regarding advancement of legal fees created an implied-in-fact contract entitling them to fees advancement in the criminal proceeding. These allegations arise out of the *Stein* Defendants' former relationship with KPMG, relate to the "meaning or effect" of the Partnership and other agreements, and concern the *Stein* Defendants' rights as former partners and mangers of the firm. [13]

**D.     Requiring The *Stein* Defendants To Arbitrate The Issue of Attorneys' Fees Does Not Violate Public Policy**

The Court has queried whether the arbitration provision may be "void as against public policy to the extent that it would foreclose an advancement determination in a criminal case by the court in which the indictment is pending." (June 26 Op. at 78 n.239.) To the contrary, the manifest public policy of the United States, as expressed in federal statute, strongly favors the arbitration of disputes. *E.g., Moses H. Cone*, 460 U.S. at 24-25, 103 S. Ct. at 941;

---

[13]   The *Stein* Defendants' contention that this Court should disregard the applicability of the Partnership Agreement's arbitration provision is misplaced. In a memorandum dated June 1, 2006, the *Stein* Defendants asserted that an "arbitration provision, no matter how broadly drafted, can reach only the claims *within* the *scope of* the *contract*." [Doc 538 at p.8] (emphasis added) (citing *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 152 (Del. 2002)). As explained above, the *Stein* Defendants' claims are squarely within the scope of the contract. Even if they were not, the arbitration provision here explicitly requires arbitration of claims not grounded in a provision of the Partnership Agreement. Finally, and setting aside *Parfi*'s tenuous support for the proposition that the right that a party seeks to arbitrate must be present in the contract itself in order for the matter to be arbitrable, this argument overlooks the fact that the FAA creates "a body of *federal substantive law* . . . applicable in state and federal court." *Buckeye Check Cashing, Inc.*, 546 U.S. at ___, 126 S. Ct. at 1208-09 (internal quotations omitted) (emphasis added). Thus, all of the *Stein* Defendants' contentions, predicated on Delaware law contrary to the controlling authority cited above, are inapposite.

*Thomas James Assocs. v. Jameson*, 102 F.3d 60, 66 (2d Cir. 1996) ("[T]he FAA represents a strong federal policy favoring arbitration.") (internal quotations omitted).

**E.    The Additional Claim of Defendant Stein and the Additional Claim of the So-Called "California Plaintiffs" Also Are Subject to Arbitration**

In Count II, Jeffrey Stein individually asserts that KPMG should advance his attorneys fees because KPMG allegedly breached his separation agreement ("Stein Agreement") when it discontinued advancement of his fees.  This claim too must be dismissed because any claim Mr. Stein has under this agreement is subject to arbitration.  The Stein Agreement specifically provides:  "<u>Arbitration.</u>  Any dispute arising under this Agreement shall be resolved in accordance with the provisions of Section 17 of the Partnership Agreement, which provisions hereby are incorporated by reference."  (Stein Separation Agmt., ¶ 24; Ex. 12.)

In addition, Count III, in which certain of the *Stein* Defendants who resided for some part of the timeframe of the indictment in California, assert that certain California labor law and corporate law provisions entitle them to advancement of fees, is also subject to arbitration for the reasons set forth above.[14]

**II.    EXERCISE OF ANCILLARY JURISDICTION IN THIS CASE WOULD EXCEED THE COURT'S AUTHORITY**

In its June 26 Opinion, the Court asserted ancillary jurisdiction over the *Stein* Defendants' claims against KPMG in order to remedy its finding that the *government* violated the *Stein* Defendants' Fifth and Sixth Amendment rights.  Respectfully, the June 26 Opinion

---

[14]    One of these California claimants, moreover, is Carl Hasting.  As noted above, a California state court has already held that Mr. Hasting's claim under California law is subject to the mandatory arbitration provisions of his Partnership Agreement.  *Res judicata* precludes Mr. Hasting from relitigating the decision of the California state court here.  *See Se. Res. Recovery Facility Auth. v. Montenay Int'l Corp.*, 973 F.2d 711, 712-14 (9th Cir. 1992) (finding California state court order compelling arbitration had preclusive effect under California law).

failed adequately to consider the constitutional, statutory, and prudential limitations on criminal ancillary jurisdiction.   Because the Defendants' Complaint against KPMG involves different parties and different claims, and turns on ascertaining different facts from the criminal prosecution, the Court's exercise of ancillary jurisdiction exceeds those constitutional limitations.   Moreover, the June 26 Opinion relied solely on the Second Circuit's decision in *Garcia v. Teitler*, 443 F.3d 202 (2d Cir. 2006), which did not involve the concerns inherent in exercising jurisdiction over an ancillary claim against a third party in a criminal proceeding, and an unpublished case, *United States v. Weissman*, No. S2 94 CR. 760 (CSH), 1997 WL 334966 (S.D.N.Y. June 16, 1997), which failed to address the constitutional and statutory limits on criminal ancillary jurisdiction, and which has been rejected by every court to consider its rationale.[15]   Therefore, KPMG now formally moves to dismiss the *Stein* Defendants' claims for lack of subject matter jurisdiction.

**A.      The Constitutional Limitations on Ancillary Jurisdiction Prevent Its Exercise Here**

"Federal courts are courts of limited jurisdiction.   They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994) (citations omitted).   Article III of the Constitution grants federal courts jurisdiction over "Cases" and "Controversies" arising under federal law or between citizens of different states.   U.S. Const. art. III, § 2.   Accordingly, where original jurisdiction does not lie over a claim, the Supreme Court

---

[15]      *See United States v. Buhler*, 278 F. Supp. 2d 1297 (M.D. Fla. 2003); *United States v. Polishan*, 19 F. Supp. 2d 327 (M.D. Pa. 1998). Although the Second Circuit cited *Weissman* in *Garcia*, the question of jurisdiction over ancillary claims against third parties was not at issue. Consequently, the citation does not constitute approval. *Cf. Kokkonen*, 511 U.S. at 379, 114 S. Ct. at 1676 ("It is to the holdings of our cases, rather than their dicta, that we must attend."); *see also Fermin v. Moriarty*, No. 96-Civ-3022, 2003 WL 21787351 (S.D.N.Y. Aug. 4, 2003) (departing without elaboration from *Weissman*).

has held that a federal court may exert ancillary jurisdiction over that claim only if its relationship to the federal claim "permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138 (1966). Here, where the Complaint for advancement involves parties, facts and claims wholly distinct from those in the criminal prosecution, no such conclusion can be drawn.

The Supreme Court has "cautioned against the exercise of jurisdiction over proceedings that are entirely new and original, or where the relief sought is of a different kind or on a different principle than that of the prior decree." *Peacock v. Thomas*, 516 U.S. 349, 358, 116 S. Ct. 862, 869 (1996) (citation, alteration, and internal quotations omitted). In *Peacock*, the plaintiff obtained a judgment on an ERISA claim in federal court against a corporation. He subsequently brought an action in federal court against the corporate directors on the theory that the directors had fraudulently conveyed corporate property to avoid the judgment against the corporation. *Id.* at 358-59. The Supreme Court held that the district court lacked ancillary jurisdiction over the claim against the directors because it was "a new lawsuit to impose liability for a judgment on a third party." *Id.* at 359; *accord H.C. Cook Co. v. Beecher*, 217 U.S. 497, 498-99, 30 S. Ct. 601, 601-02 (1910).

This is precisely what the *Stein* Defendants attempt to do here. Having obtained an order from this Court finding that the government violated their constitutional rights, the *Stein* Defendants now seek to remedy that violation through "a judgment on a third party" – KPMG. They seek to do so without any relevant fact-finding, and on an entirely distinct legal theory that has nothing to do, factually or legally, with their claim against the government, or the government's case against the *Stein* Defendants. The *Stein* Defendants' purported claims against

32

KPMG thus are simply not part of the constitutional case or controversy over which the Court has original jurisdiction. Consequently, the Court cannot assert ancillary jurisdiction over them.

The cases on which the Court relied here, moreover, either did not implicate or did not address this constitutional limitation on ancillary jurisdiction. In *Garcia*, the exercise of jurisdiction over a fee dispute between a party *and his attorney* was constitutionally appropriate because of the attorney's position as an officer of the court and his presence before the court in the underlying criminal litigation. "[A] court has a responsibility to protect its own officers in such matters as fee disputes." *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2d Cir. 1988); *see also Novinger v. E.I. DuPont de Nemours & Co.*, 809 F.2d 212, 217 (3d Cir. 1987) (stating that "the federal forum has a vital interest in [fee] arrangements [between lawyer and client] because they bear directly upon the ability of the court to dispose of cases before it in a fair manner").

The exercise of ancillary jurisdiction over a criminal defendants' claim against a true non-party for the payment of legal fees, however, is nearly unprecedented. In fact, we are unaware of any case other than the unpublished *Weissman* decision where this occurred. The *Weissman* decision, however, did not discuss the constitutional considerations outlined above, and understandably has not been followed by any other court.

One of the decisions that declined to follow *Weissman* was *United States v. Polishan*, 19 F. Supp. 2d 327, 333 (M.D. Pa. 1998), in which the court refused to assert jurisdiction over an advancement claim by a criminal defendant against his former employer and the employer's insurer. As *Polishan* explained, ancillary jurisdiction

> is not just a matter of fostering judicial economy, minimizing litigants' costs, or protecting court officers. It is, on the contrary, a matter of ensuring that federal judicial power is exercised only in a case or controversy within a federal court's limited subject matter jurisdiction. The existence of a common nucleus of

33

operative facts, court control over property, or the presence of parties to a fee dispute are precisely the type of factors that assures that the vague concept of ancillary jurisdiction does not overwhelm the boundaries of federal judicial authority.

*Id.*

**B.     The Court's Statutory Jurisdiction Limits the Exercise of Criminal Ancillary Jurisdiction As Well**

"Constitutional power is merely the first hurdle that must be overcome in determining that a federal court has jurisdiction over a particular controversy.   For the jurisdiction of the federal courts is limited not only by the provisions of Art. III of the Constitution, but also by Acts of Congress." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372, 98 S. Ct. 2396, 2401 (1978).   Therefore, before exercising ancillary jurisdiction, a district court must examine "the specific statute that confers jurisdiction over the federal claim." *Id.* at 373.   This examination demonstrates that the exercise of jurisdiction over the *Stein* Defendants' claims against KPMG is inappropriate.

The statute conferring jurisdiction in *U.S. v. Stein* is 18 U.S.C. § 3231.   That statute provides that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."   18 U.S.C. § 3231 (2006).   No other type of claim is possible under the statute.   *See Polishan*, 19 F. Supp. 2d at 333 ("Unlike the civil arena, [in criminal cases,] there is no room for cross claims, counterclaims, third party action, or wide-ranging discovery.").   Courts therefore only approve of ancillary jurisdiction over claims that are directly connected to the criminal proceeding.   For example, the Second Circuit has held that ancillary jurisdiction is appropriate over a motion to have arrest records expunged, *United States v. Schnitzer*, 567 F.2d 536, 538 (2d Cir. 1977), and over a claim for the return of property seized incident to arrest, *Rufu v. United States*, 20 F.3d 63, 65 (2d Cir. 1994).   *See generally Garcia*, 443 F.3d at 207 (collecting cases).   The holding in

*Garcia* itself is likewise narrowly drawn to establish a firm connection with the district court's original jurisdiction: "[W]e hold that resolving a fee dispute after an attorney withdraws following a *Curcio* hearing is within a district court's ancillary powers." *Id.* at 208.

The present case, moreover, is distinguishable from *Weissman*, where the court asserted ancillary jurisdiction to resolve the purely legal question of whether the defendant's uncontested right to advancement extended to the sentencing phase of his prosecution, as it had to his already completed trial.  By contrast, the third party contract claim here, if not dismissed, would involve substantial disputed questions of fact wholly unrelated to the criminal prosecution.

In sum, the circumstances here are quite different from *Weissman* and *Garcia*. This is not a fee dispute between a client and the attorney that represented him in the criminal prosecution, and there is no connection between the Court's statutory jurisdiction over the *Stein* criminal prosecution and the Defendants' state law contract claims against KPMG.   In these circumstances, the *Stein* Defendants' claims against KPMG cannot reasonably be considered part of the statutory case or controversy over which § 3231 grants the Court jurisdiction.

**C.    Use of A Summary Process To Resolve These Civil Claims Would Violate KPMG's Rights**

Even if the Defendants' state law contract claims were within the boundaries of ancillary jurisdiction, which they are not, the Court should decline to exercise such jurisdiction, given the fundamental unfairness to KPMG of doing so.

At the hearing on July 13, 2006, the Court directed KPMG, in accordance with its opinion in criminal case 05-CR-0888 (LAK), to respond to "papers" that were filed in a proceeding to which KPMG was not a party, and to do so before KPMG even would be required under the Federal Rules of Civil Procedure to respond to the Complaint against it.  The June 26

Opinion also suggested that the Court would treat those "papers" in effect as a motion for summary judgment against KPMG, based on a record put forward by the *Stein* Defendants and the government in *U.S. v. Stein*, and that it would decline to exercise jurisdiction over any claims other than advancement, or any affirmative defenses or counterclaims KPMG may have arising out of the same facts and circumstances. As authority for this approach, the June 26 Opinion invoked Fed. R. Civ. P. 1 and the "speedy hearing" provisions of Fed. R. Civ. P. 57; Delaware and New York laws relating to corporations (not partnerships); and Delaware corporate case law. (June 26 Op. at 77-78 & nn. 237-38.) On careful review, none of these sources authorizes the Court to overrule the Federal Rules of Civil Procedure or to divest KPMG of its constitutional rights to due process.

### 1.    *The Federal Rules Do Not Authorize a Summary Proceeding in This Case*

Rule 57 states that the procedure for obtaining a declaratory judgment "shall be in accordance with these rule." Fed. R. Civ. P. 57. While it allows for "a speedy hearing" in appropriate cases, for several reasons, this is not one of them.

First, a speedy hearing is warranted only when the action involves "an issue of law on undisputed or relatively undisputed facts." *Rechler P'ship v. Resolution Trust Corp.*, No. 90-3091, 1990 WL 711357, at *7 (D.N.J. Sept. 7, 1990) (citation and internal quotations omitted). In *Rechler*, a speedy hearing was deemed appropriate because the "essential fact" in the case was undisputed, leaving a "purely legal" question for the court to resolve. *Id.* Here, the *Stein* Defendants' claims to advancement do not rest on express provisions of contract or law, and if not dismissed or sent to arbitration, would involve substantial factual development.[16]

---

[16]    Furthermore, the *Stein* Defendants' request for a speedy hearing is premature. The Court should not determine whether a speedy hearing is appropriate until after the defendant has answered. *See Drinan v. Nixon*, 364 F. Supp. 853, 854 (D. Mass. 1973) ("Implicit in [Rule
*(cont'd)*

Second, to the extent the *Stein* Defendants seek to rely on this Court's June 26 findings in criminal case 05-CR-0888 (LAK), they are not binding on KPMG in civil case 06-CV-05007 (LAK). Neither *res judicata* nor collateral estoppel prevent KPMG from seeking discovery on, or fully litigating, those findings here. *See Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) (stating collateral estoppel requires that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits," as well as a finding that application of estoppel is fair) (internal quotations omitted); *Ambase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (stating res judicata requires, *inter alia*, that "the parties to the subsequent action are the same as (or privies to those in) the prior action" and "the causes of action in both cases are the same or the subsequent action arises from the same transaction that formed the basis of the prior action").

Further, although the Federal Rules of Civil Procedure should be "construed and administered to secure the just, speedy, and inexpensive determination" of an action, Fed.R.Civ.P. 1, they still must be *construed* and *administered*. Indeed, as the Federal Rules of Civil Procedure are submitted to Congress and become effective only upon the acquiescence of Congress, *see* 28 U.S.C. § 2074 (2006), the rules have the force and effect of law and cannot, unless a specific rule permits, be varied or omitted as a matter of judicial discretion. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 255, 108 S. Ct. 2369 (1988) (Federal Rules of Civil

---

*(cont'd from previous page)*
57] is the assumption that prior to such order for a speedy hearing, the matter in issue will have been joined by the filing of a responsive pleading.").

Procedures, like the Federal Rules of Criminal procedure, are "as binding as any federal statute").

Finally, and most significantly, the "Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465, 120 S. Ct 1579, 1584 (2000). Due process requires that a defendant have an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191 (1965). This includes the right under the Federal Rules to conduct discovery and develop a factual record regarding each individual *Stein* Defendant's claims—including, but not limited to, defenses unique to particular *Stein* Defendants involving the course of conduct between the individual and KPMG, whether the individual acknowledged that KPMG had no obligation to advance legal fees to him, and whether the individual waived any purported right to advancement. *See supra* pp. 7-11. KPMG moreover, has the right to depose and cross-examine the *Stein* Defendants to challenge the factual assertions they have already made. *See, e.g.*, *Guttman v. CFTC*, 197 F.3d 33, 38-39 (2d Cir. 1999) ("It is undisputed that denial of the opportunity to cross-examine a witness whose testimony forms the basis for adverse findings can constitute grounds for reversal."). These due process requirements make any type of summary proceeding wholly inadequate to the resolution of this ancillary proceeding. If the Court is going to adjudicate these claims at all, it must do so consistent with Constitutional guarantees and proper federal procedure.[17]

---

[17]   In addition, in the event the claims are ultimately determined not to be arbitrable, KPMG will have a right to a jury trial on these claims, and its counter-claims. Rule 57 explicitly recognizes a defendant's right to a jury trial in a declaratory judgment action. "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S. Ct. 296, 301 (1935). This Court recognized KPMG's right to a jury when it encouraged the government
*(cont'd)*