IN WITNESS WHEREOF, the Board of Directors having adopted and approved this Agreement, which amends and restates the 2002 Existing Agreement in its entirety pursuant to authority granted by the Members, the Members have duly caused to be executed this Agreement as of October 1, 2003.

KPMG LLP

Dated: _____     By:_____
                               (Chairman)

28

**Appendix 1**
**to**
**Partnership Agreement of KPMG LLP**

The following provisions shall be in effect pursuant to the Partnership Agreement of KPMG LLP (such agreement without reference to the provisions of this appendix (this "Appendix"), being referred to in this Appendix as the "Partnership Agreement") for the periods described below:

1.    Effective Date. This Appendix shall apply to all periods beginning on and after July 1, 1999, in accordance, except to the extent otherwise specifically provided herein, with the provisions of the 2001 Partnership Agreement (such term and all other capitalized terms not otherwise specifically defined in this Appendix having the meaning provided in the Partnership Agreement); provided, however, that for periods beginning on and after July 1, 2001, this Appendix shall not apply, except to the extent otherwise specifically provided herein, to the extent it is inconsistent with any provision of the Partnership Agreement.

2.    Terms of Directors. For purposes of determining the terms of classes of Directors pursuant to Section 3.1(ii) of the Partnership Agreement, the short Fiscal Year beginning July 1, 2001 and ending September 30, 2001 shall not be counted as a separate Fiscal Year so that the term of the class of Directors whose term would have expired at the Annual Meeting of Members next held after June 30, 2001 shall expire at the Annual Meeting of Members held in the Fiscal Year ending September 30, 2002 and similarly with respect to succeeding classes of Directors.

3.    Death, Withdrawal and Separation. The provisions of Sections 9, 10 and 11 of the Partnership Agreement shall be applicable in respect of the matters set forth therein for periods prior to July 1, 2001, except as follows:

3.01    Death. With respect to Section 9 of the Partnership Agreement, in the event a Special Memorandum Entry as hereafter defined existed with respect to such Member at the time of death, any distribution of cash which is subsequently made by the Firm with respect to such Special Memorandum Entry shall be paid as provided in Section 9 of the Partnership Agreement with respect to such Member's Capital Account.

4.    Remedies of the Firm for Breach. In connection with Section 12.3(iv) of the Partnership Agreement, the Board of Directors shall have authority to terminate any rights that might otherwise be due a Separated Member under the Partnership Agreement with respect to any amounts distributable pursuant to Appendix Section 6 and the authority of the Board of Directors is in addition to, and not in lieu of, any separate agreements and remedies to which a Member has agreed as a condition to receiving Consulting Common Stock or any payment with respect to a Special Memorandum Entry pursuant to Appendix Section 6.

5.    Binding Effect of Annual Financial Reports. A Member shall be conclusively bound pursuant to Section 16(ii) of the Partnership Agreement with respect to the annual statement of his or her Special Memorandum Entry.

A-1

6.    <u>Special Provisions in Connection with the IPO Proceeds of KPMG Consulting, Inc.</u> Notwithstanding anything to the contrary in the Partnership Agreement or By-laws, the following provisions shall apply in connection with the creation of KPMG Consulting, LLC ("<u>LLC</u>") and KPMG Consulting, Inc. ("<u>Consulting, Inc.</u>"), the receipt of equity and debt interests in connection therewith, and the initial public offering of Consulting, Inc. (the "<u>IPO</u>").

6.01    <u>Special Definitions.</u> As used herein, the following terms shall have the meanings ascribed thereto below:

6.01.01    "<u>Accredited Investor</u>" has the meaning ascribed thereto in Rule 501(a) of the Securities Act of 1933, as amended.

6.01.02    "<u>Active Members</u>" shall mean those persons who were Members on August 20, 1999.

6.01.03    "<u>Consulting Employees</u>" shall mean those Members of the Firm who were described or otherwise identified as Consulting Employees pursuant to the Separation Agreement.

6.01.04    "<u>Electing Retired Active Member</u>" shall mean a Retired Active Member who (i) retired before the Cisco Execution Date and (ii) elected to receive a lump-sum distribution of his or her benefits under the Retirement Allowance Plan or Supplemental Retirement Allowance Plan at the same time such distributions were made to retired Members who were not Active Members.

6.01.05    "<u>Eligible Members</u>" shall mean those Members who were Members both on August 12, 1998 and on December 29, 1999 (the "Cisco Execution Date") and who had not had their participation placed in suspension pursuant to Article VIII of the [prior] By-laws.

6.01.06    "<u>IPO</u>" shall mean the initial public offering of Consulting Common Stock completed on February 13, 2001.

6.01.07    "<u>IPO Proceeds</u>" shall mean the proceeds to the Firm from the sale of shares on the IPO, net of underwriting discount and commissions and such other expenses of sale as the Board of Directors determined in its sole discretion.

6.01.08    "<u>Non-Accredited Members</u>" shall mean those Eligible Members who were not Accredited Investors.

6.01.09    "<u>Qualified Members</u>" shall mean those Members who were both Eligible Members and were Accredited Investors on August 31, 1999.

6.01.10    "<u>Retired Active Members</u>" shall mean those Active Members who retired after August 19, 1999, but before February 28, 2001, unless such Retired Active Member was an Electing Retired Active Member.

A-2

6.02    <u>Issuance of LLC Membership Units</u>. Subject to the terms of the Separation Agreement dated as of December 29, 1999 among the Firm, LLC and Consulting, Inc., and the agreements contemplated therein (together, the "<u>Separation Agreement</u>") membership units in LLC ("<u>Membership Units</u>") were issued to Qualified Members and the Firm. The issuance of the Membership Units to Qualified Members of the Firm who were Consulting Employees ("<u>Qualified Consulting Members</u>") shall be considered as partial payment in liquidation of their interests in the Firm and as being made in exchange for a portion of their interests in Firm property, including goodwill, within the meaning of Section 736(b)(1) of the Code. Pursuant to the Separation Agreement, the Firm and the Qualified Members received Membership Units as follows:

6.02.01    The relative portion (a "<u>Consulting Member's Share</u>") attributable to each Eligible Member who was a Consulting Employee in relation to all Eligible Members who were Consulting Employees was determined based upon the number of Units of Interest held by such Member on July 1, 1999 (or in the case of Class A Members, an equivalent unit calculation (the "Class A Equivalent Unit") based upon such Member's guaranteed salary, less $1,500, divided by an assumed annual Unit value of $470), compared to the number of Units of Interest and Class A Equivalent Units held at July 1, 1999 by all Eligible Members who were Consulting Employees.

6.02.02    Qualified Consulting Members who executed such agreements as were required by the Separation Agreement received their relative Consulting Member's Share of the aggregate Membership Units allocated to all Qualified Consulting Members.

6.02.03    The relative portion (an "<u>LLP Member's Share</u>") attributable to each Eligible Member who was not a Consulting Employee in relation to all Eligible Members who were not Consulting Employees was determined based upon the number of Units of Interest held by such Member at July 1, 1999 (or in the case of Class A Members, their Class A Equivalent Units) compared to the number of Units of Interest and Class A Equivalent Units held at July 1, 1999 by all Eligible Members who were not Consulting Employees.

6.02.04    Qualified Members who were not Qualified Consulting Members ("<u>Qualified LLP Members</u>") and who executed such agreements as were required by the Separation Agreement received their relative LLP Member's Share of the aggregate Membership Units allocated to all Qualified Consulting Members (the "<u>LLP Pool</u>").

6.02.05    The remaining Membership Units were distributed to the Firm, including the number of Membership Units that would have been allocated and issued to Non-Accredited Members under Sections 6.02.01 and 6.02.03 had the Non-Accredited Members been Qualified Members (the "<u>Non-Accredited Pool</u>").

6.02.06    A special memorandum entry (the "<u>Special Memorandum Entry</u>") was made on behalf of Non-Accredited Members (including Non-Accredited Members who became Consulting Employees) who executed such agreements as were required by the Board of Directors. Such Special Memorandum Entry equaled in the aggregate $172,376,426 (as adjusted for forfeitures and other adjustments subsequent to January 31, 2000) and was calculated on the basis of the aggregate number of Membership Units contained in the Non-Accredited Pool

A-3

valued at an assumed value of $11.69 per Membership Unit (the "Assumed Value") allocated among Non-Accredited Members as provided in Appendix Sections 6.02.01 and 6.02.03. The IPO Proceeds were not sufficient to discharge such Special Memorandum Entry at the Assumed Value and the Special Memorandum Entry was discharged as hereafter provided. Non-Accredited Members were not entitled to receive interest on and did not have any right to draw any amount with respect to such Special Memorandum Entry except as provided in this Appendix Section 6.

   6.03   Issuance of Shares of Consulting Common Stock. Pursuant to the Separation Agreement, all Membership Units issued to Qualified Members and all but 2,186,950 of the Membership Units issued to the Firm were automatically exchanged for an equivalent number of shares of common stock of Consulting, Inc. ("Consulting Common Stock") (all such share numbers being adjusted for a subsequent reverse stock split at the time of the IPO) as follows:

   6.03.01  Qualified Consulting Members who executed the agreements required by the Separation Agreement received in exchange for an equivalent number of Membership Units held by such Qualified Consulting Members an aggregate of 8,325,724 shares of Consulting Common Stock (the "Consulting Pool");

   6.03.02  Qualified LLP Members who executed the agreements required by the Separation Agreement received in exchange for an equivalent number of Membership Units held by such Qualified LLP Members an aggregate of 16,094,675 shares of Consulting Common Stock (the "LLP Pool");

   6.03.03  The Firm received in exchange for an equivalent number of Membership Units held by the Firm a total of 51,523,750 shares of Consulting Common Stock designated as follows: (i) 18,146,637 shares of Consulting Common Stock the proceeds from the sale of which were applied to discharge the Firm's obligations to Active Members (except Electing Retired Active Members) under the Retirement Allowance Plan and Supplemental Retirement Allowance Plan (the "RAP Pool"); (ii) 30,454,299 shares of Consulting Common Stock (which shares included any shares obtained in exchange for Membership Units originally included in the Consulting Pool, the LLP Pool and the Non-Accredited Pool for which Members failed to execute any agreements required by the Separation Agreement or the Board of Directors) (the "Treasury Shares", which term also includes (A) any shares of Consulting Common Stock which were forfeited to the Firm pursuant to the provisions of any agreement required to be executed by the Separation Agreement or the Board of Directors, and (B) those shares of Consulting Common Stock subsequently received by the Firm at the time of the IPO on exchange of the 2,186,950 Membership Units initially retained by the Firm); (iii) 2,922,814 shares of Consulting Common Stock, the proceeds from the sale of which were applied to discharge the Firm's obligations to Non-Accredited Members for their Special Memorandum Entry; and (iv) promissory notes in the amounts of $630 million and $31.9 million. The proceeds received by the Firm with respect to the promissory notes described in clause (iv) of this Appendix Section 6.03.03 were applied to discharge, to the extent sufficient, the Firm's obligation under the Retirement Allowance Plan and Supplemental Retirement Allowance Plan to retired Members and their beneficiaries who so elected as of March 1, 2000 and who were not Active Members (except Electing Retired Active Members). Such payments shall be considered

as a distributive share (as described in Section 736(a)(1) of the Code) of the Firm's income and gain recognized in connection with the receipt and payment of such promissory notes, and each such retired Member (or beneficiaries) and Electing Retired Active Member who receives such proceeds shall be specially allocated an amount of such income and gain recognized by the Firm in connection with the receipt and payment of such promissory note equal to the amount of such proceeds received by such electing person.

    6.04    <u>Application of Firm Consulting Shares</u>. The shares of Consulting Common Stock issued to the Firm in exchange for Membership Units as provided in the Separation Agreement and as described above in this Appendix Section 6 were owned solely by the Firm and not by Members. Upon the IPO, the IPO Proceeds were applied, as authorized and approved by vote of the Members, as follows:

    6.04.01  The IPO Proceeds of $313,573,887 from sale of all the shares held in the RAP Pool were applied to discharge, in part, the Firm's obligations under the Retirement Allowance Plan and Supplemental Retirement Allowance Plan to Active Members;

    6.04.02  The IPO Proceeds of $50,506,226 from sale of all the shares held in the Non-Accredited Pool were applied to partially discharge the Special Memorandum Entries (equal to 29.2999611% of each Special Memorandum Entry) for each Non-Accredited Member (including those Consulting Employees who were Non-Accredited Members), each of whom was allocated a pro rata amount of gain recognized by the Firm in connection with the sale of the shares held in the Non-Accredited Pool; and

    6.04.03  The IPO Proceeds from the sale of the Treasury Shares were applied as follows:

    1st: IPO Proceeds in an amount which, together with payment of the IPO Proceeds of $313,573,887 from the RAP Pool, was sufficient to discharge 75.18 percent of the Firm's obligations to Active Members under the Retirement Allowance Plan and Supplemental Retirement Allowance Plan were paid to Active Members in cash on or about February 28, 2001 (after an interest-bearing reserve was withheld and set aside on behalf of each such person to pay his or her non-resident state taxes and after reduction for each such person's pro rata share of the Special Guaranteed Compensation Payment described below), together with interest at the rate of 5.50 percent from February 13, 2001 to March 1, 2001; and (i) each Member or former Member (except Electing Retired Active Members) who received such proceeds was also specially allocated an amount of gain recognized by the Firm in connection with the IPO equal to the portion of such proceeds from the RAP Pool and the sale of Treasury Shares received by such Member or former Member; and (ii) the proceeds distributed to Retired Active Members were reduced by all amounts previously distributed to such Retired Active Members pursuant to the Retirement Allowance Plan and Supplemental Retirement Allowance Plan. As authorized and approved by vote of the Members, the Firm's remaining obligations under the Retirement Allowance Plan and Supplemental Retirement Allowance Plan were provided for in Amended and Restated Supplements to the Retirement Allowance Plan and the Supplemental Retirement Allowance Plan, being adopted contemporaneously with this Appendix.

A-5

2nd: An amount of $52,919,630 representing payment of Guaranteed Compensation (the "Special Guaranteed Compensation Payment"), together with the IPO Proceeds of $50,506,226 from the sale of shares in the Non-Accredited Pool, constituting an aggregate amount of $103,425,856, was distributed to Non-Accredited Members (including Non-Accredited Members who became Consulting Employees). Such distribution was in full satisfaction of all amounts due or owing with respect to the Special Memorandum Entries made in accordance with the Existing Agreement and no further or other amounts are payable or due with respect thereto. No special allocation of gain recognized by the Firm in connection with the IPO, other than the special allocation described in Section 5.04.02 of this Appendix 5, was made to Non-Accredited Members with respect to the distribution made pursuant to clause 2nd of this Section 5.04.03.

A-6

IN WITNESS WHEREOF, the parties hereto have duly executed this Partnership Agreement as of the dates set forth opposite their respective signatures.

KPMG LLP

Dated: July 1, 2000

_____
Chairman

Dated: July 1, 2000

_____
Signature

Randall S. Bickham
_____
Print Name

**RECEIVED**

**JUN 2 9 2000**

**PARTNER SERVICES**

18                    (SIGNATURE PAGE FOR
                     EXECUTIVE OFFICE FILES)


Section 11.  Entire Agreement

This Agreement replaces any former agreements between the parties

hereto.  It may be subscribed by the Partners and Principals in several coun-

terparts, all of which taken together shall be deemed one and same instrument.


IN WITNESS WHEREOF, the parties hereto have hereunto set their

respective hands as of the day and year first above written.


_____          _____
        Witness                            Signature – Partner/~~Principal~~


                                          _____
                                            Name – Partner/~~Principal~~
                                                (type or print)


PEAT, MARWICK, MITCHELL & CO.
      (UNITED STATES)

   ARTICLES OF PARTNERSHIP
      July 1, 1975

*(SIGNATURE PAGE FOR
EXECUTIVE OFFICE FILES)*

-41-

IN WITNESS WHEREOF, the parties hereto have hereunto set their respective hands as of the day and year first above written.

_____
Witness

PEAT MARWICK MAIN & CO.

_____
JEFFREY A. EISCHEID

**ARTICLES OF PARTNERSHIP**
**(As Amended As Of April 1, 1987)**

RECEIVED

SEP   1977



IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of and deemed effective as of the Effective Date.

KPMG CONSULTING, LLC

By: _____
   Name:
   Title:

KPMG CONSULTING, INC.

By: _____
   Name:
   Title:

KPMG LLP

By: _____
   Name:
   Its:

_____
Member Signature

DAVID B. GREENFIELD

KPMG LLP/QUALIFIED

# PARTNERSHIP AGREEMENT

## OF

## KPMG PEAT MARWICK, LLP

## EFFECTIVE AS OF JULY 1, 1997

IN WITNESS WHEREOF, the parties hereto have duly executed this Partnership Agreement as of the day and year set forth below.

KPMG PEAT MARWICK LLP

Dated: As of  July 1, 1998

Chairman

Dated: As of  July 1, 1998

Signature

Steven Gremminger

Print Name



IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of and deemed effective as of the Effective Date.

KPMG CONSULTING, LLC

By: _____
    Name:
    Title:

KPMG CONSULTING, INC.

By: _____
    Name:
    Title:

KPMG LLP

By: _____
    Name:
    Its:

_____
Member Signature

CARL D. HASTING

KPMG LLP/NON-QUALIFIED

(SIGNATURE PAGE FOR
EXECUTIVE OFFICE FILES)

20

Section 10. Severability

In case any one or more of the provisions contained in this Agreement shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.


Section 11. Entire Agreement

This Agreement replaces any former agreements between the parties hereto. It may be subscribed by the Partners in several counterparts, all of which taken together shall be deemed one and the same instrument.


IN WITNESS WHEREOF, the parties hereto have hereunto set their respective hands as of the day and year first above written.


_____                    _____
      Witness

RALPH C. ROSENFELD                          JOHN T. LANNING


PEAT, MARWICK, MITCHELL & CO.
       (UNITED STATES)

ARTICLES OF PARTNERSHIP
        July 1, 1981

20

## Section 10. Severability

In case any one or more of the provisions contained in this Agreement shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

## Section 11. Entire Agreement

This Agreement replaces any former agreements between the parties hereto.  It may be subscribed by the Partners in several counterparts, all of which taken together shall be deemed one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have hereunto set their respective hands as of the day and year first above written.

_Frank E. Thlusa_
_____
Witness

RECEIVED   _Robert A Pfaff_

JUL  1 1985    _Robert  A  PFAFF_

PEAT, MARWICK, MITCHELL & CO.
(UNITED STATES)

ARTICLES OF PARTNERSHIP
July 1, 1981.

(SIGNATURE PAGE FOR
EXECUTIVE OFFICE FILES)

- 17 -

Section 10.  **Severability**

In case any one or more of the provisions contained
in this Agreement shall be invalid, illegal or unenforceable
in any respect, the validity, legality and enforceability of
the remaining provisions contained herein shall not in any
way be affected or impaired thereby.

Section 11.  **Entire Agreement**

This Agreement replaces any former agreements between
the parties hereto.  It may be subscribed by the Partners in
several counterparts, all of which taken together shall be
deemed one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have hereunto
set their respective hands as of the day and year first above
written.

_____          _____
Witness                                    GREGG W. RITCHIE

PEAT MARWICK MAIN & CO. (GENERAL)

ARTICLES OF PARTNERSHIP
(As Amended As Of July 1, 1987)

# PARTNERSHIP AGREEMENT

## OF

## KPMG LLP

## EFFECTIVE AS OF JULY 1, 1997

IN WITNESS WHEREOF, the parties hereto have duly executed this Partnership Agreement as of the day and year set forth below.

KPMG LLP

*[signature]*

Dated: As of July 1, 1999

Chairman

*[signature]*
_____
Signature

Dated: As of July 1, 1999

DAVID   RIVKIN
_____
Print Name

RECEIVED

JUL 3 0 1999

JOYCE M. KUEHNER
PARTNER SERVICES

-41-

IN WITNESS WHEREOF, the parties hereto have hereunto set their respective hands as of the day and year first above written.

_____
Witness

_____
Richard P. Rosenthal
RICHARD P. ROSENTHAL

PEAT MARWICK MAIN & CO.
_____

ARTICLES OF PARTNERSHIP
(As Amended As Of April 1, 1987)

-29-

RECEIVED

JUN 7 1995

JOYCE M. KUEHNER
PARTNER SERVICES

Section 8. Special Arrangements

Notwithstanding anything to the contrary set forth herein, Main Hurdman Partners listed in Exhibit B shall be entitled to such special arrangements as set forth in such Exhibit or attachments thereto.

Section 9. Amendments

Amendments to (i) the provisions of this Article VII, to the extent such provisions continue to be relevant and operative, (ii) Article III, Section 4 hereof which would reduce the benefits payable under the Supplemental Retirement Allowance Plan, and (iii) the provisions of these Articles of Partnership proposed prior to June 30, 1992, which would inequitably affect the Main Hurdman Partners as compared with Partners generally, and materially diminish the rights granted the Main Hurdman Partners pursuant to the Basic Memorandum of Understanding, may be made only by obtaining the affirmative vote or written consent of not less than 75% in number of the Main Hurdman Partners entitled to vote at the time of such vote or written consent, in addition to the normal approval requirements set forth in Article VI, Section 7 hereof.

IN WITNESS WHEREOF, the parties hereto have hereunto set their respective hands as of the day and year first above written.

_Lisa Kelloway_
Witness
LISA KELLOWAY

_Steve K. Rainey_
STEVE K RAINEY

KPMG PEAT MARWICK

_Richard H. Smith, Jr._
RICHARD H. SMITH, JR
ARTICLES OF PARTNERSHIP

(SIGNATURE PAGE FOR
EXECUTIVE OFFICE FILES)

-41-

    IN WITNESS WHEREOF, the parties hereto have hereunto set their respective hands as of the day and year first above written.

_____
       Witness

Jeffrey M. Stein

PEAT MARWICK MAIN & CO.

   ARTICLES OF PARTNERSHIP
(As Amended As Of April 1, 1987)

KPMGZ00010744

0000955171-1

Z01567664

- 17 -

### Section 10.  Severability

In case any one or more of the provisions contained in this Agreement shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

### Section 11.  Entire Agreement

This Agreement replaces any former agreements between the parties hereto.  It may be subscribed by the Partners in several counterparts, all of which taken together shall be deemed one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have hereunto set their respective hands as of the day and year first above written.

_____          _____
Witness                                 Jeffrey M. Stein

PEAT MARWICK MAIN & CO. (GENERAL)

ARTICLES OF PARTNERSHIP
(As Amended As Of July 1, 1987)

KPMGZ00010745

0000955172-1

Z01567665

Section 8.  Special Arrangements

AUG 1   1993

Notwithstanding anything to the contrary set forth herein, Main Hurdman Partners listed in Exhibit B shall be entitled to such special arrangements as set forth in such Exhibit or attachments thereto.

Section 9.  Amendments

Amendments to (i) the provisions of this Article VII, to the extent such provisions continue to be relevant and operative, (ii) Article III, Section 4 hereof which would reduce the benefits payable under the Supplemental Retirement Allowance Plan, and (iii) the provisions of these Articles of Partnership proposed prior to June 30, 1992, which would inequitably affect the Main Hurdman Partners as compared with Partners generally, and materially diminish the rights granted the Main Hurdman Partners pursuant to the Basic Memorandum of Understanding, may be made only by obtaining the affirmative vote or written consent of not less than 75% in number of the Main Hurdman Partners entitled to vote at the time of such vote or written consent, in addition to the normal approval requirements set forth in Article VI, Section 7 hereof.

IN WITNESS WHEREOF, the parties hereto have hereunto set their respective hands as of the day and year first above written.

_____          *Carol G. Warley*
Witness

KPMG PEAT MARWICK

_____

ARTICLES OF PARTNERSHIP

IN WITNESS WHEREOF, the parties hereto have duly executed this Partnership Agreement as of the day and year set forth below.

KPMG PEAT MARWICK LLP

Chairman

Dated: As of  July 1, 1997

Signature

MARK WATSON

Print Name

Dated: As of  July 1, 1997

RECEIVED

AUG 2 7 1997

JOYCE M. KUEHNER
PARTNER SERVICES

(SIGNATURE PAGE FOR
EXECUTIVE OFFICE FILES)

Section 11.  Entire Agreement

This Agreement replaces any former agreements between the parties

hereto.  It may be subscribed by the Partners in several counterparts, all

of which taken together shall be deemed one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have hereunto set their

respective hands as of the day and year first above written.

_____    _____
            Witness                           Signature

                                   _____
                                         Philip J. Wiesner
                                        Name (type or print)

PEAT, MARWICK, MITCHELL & Co.
        (UNITED STATES)
_____

ARTICLES OF PARTNERSHIP
        July 1, 1975
_____