UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

              -against-                                       S1 05 Crim. 0888 (LAK)
                                                         06 Civ. 5007 (LAK)

JEFFREY STEIN, et al.,

                               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

UNITED STATES OF AMERICA,

              -against-

JEFFREY STEIN, et al.,

                               Defendants.

JEFFREY STEIN, et al.,

                               Plaintiffs,

              -against-

KPMG LLP,

                               Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

LEWIS A. KAPLAN, *District Judge.*

           The sixteen KPMG Defendants seek an order compelling KPMG to advance their

defense costs in this criminal case and a corresponding declaratory judgment.  On September 6, 2006,

this Court denied KPMG's motion to dismiss their complaint.  Trial of the advancement claim has

been set for October 17 in the hope of resolving this dispute in sufficient time to adhere to the already

once-postponed January 2007 trial date for the criminal charges.

      KPMG has filed a notice of appeal, claiming that the Court erred in denying its motion because it lacks ancillary jurisdiction to hear the dispute and the KPMG Defendants are obliged to arbitrate the advancement issue.  KPMG now moves for a stay pending appeal.  The Court assumes familiarity with the three previous pertinent opinions in this case.[1]

*Discussion*

A.    *Legal Standard*

      The fact that KPMG seeks to appeal this Court's ruling that the advancement claims are not arbitrable neither deprives this Court of jurisdiction to proceed to trial nor, in and of itself, requires a stay.  To the contrary, as KPMG concedes, "a stay is not required," and the question whether to proceed to trial despite the pendency of an appeal claiming a right to arbitrate lies within the discretion of the district court.[2]  So too with the attempt to appeal the ancillary jurisdiction ruling.

      "Four criteria are relevant in considering whether to issue a stay of an order of a district court or an administrative agency pending appeal: the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest."[3]  As the requisite degree of likelihood of success "will vary according to the

---

[1]    *United States v. Stein,* Nos. S1 05 Crim. 0888, 06 Civ. 5007 (LAK), 2006 WL 2556076 (S.D.N.Y. Sept. 6, 2006) (*"Stein III"*); *United States v. Stein,* 440 F. Supp. 2d 315 (S.D.N.Y. 2006) (granting in part and denying in part motion to suppress evidence); *United States v. Stein,* 435 F. Supp. 2d 330 (S.D.N.Y. 2006) (granting in part and denying in part motion of KPMG Defendants to dismiss the indictment or for other relief) (*"Stein I"*).

[2]    Docket item 753, at 3 (citing *Motorola Credit Corp. v. Uzan,* 388 F.3d 39 (2d Cir. 2004)).

[3]    *Mohammed v. Reno,* 309 F.3d 95, 100 (2d Cir. 2002).

court's assessment of the other [stay] factors,"[4] it is appropriate to begin with the equities and the public interest. Moreover, in balancing the equities, it is helpful to consider whether the harm to the applicant if a stay were denied and the order appealed from reversed would outweigh the harm to the opponent if a stay were granted and the order appealed from upheld.[5]

B.     Analysis

    1.     *Irreparable Injury*

        Absent a stay, KPMG will be compelled to participate in pretrial discovery and, perhaps, other pretrial proceedings. It faces also two other possibilities. First, depending upon how quickly the appeal is decided, it could face a trial. Second, again depending upon how quickly the appeal is decided, the matter may proceed to judgment. In each case, therefore, we consider whether the possibility, were it to occur, actually would injure KPMG and, if so, whether the injury would be irreparable.

        It is doubtful that participation in discovery proceedings in this Court would injure KPMG, let alone irreparably, even if it ultimately prevailed on its claim that it is entitled to arbitrate rather than litigate. In the one previous arbitration concerning this issue, KPMG *sought* discovery. Indeed, its arbitration strategy appears to be to provoke the KPMG Defendants to invoke the Fifth Amendment by seeking to question them in depositions concerning the merits of the criminal case and then to seek either dismissal or stay of their claims based on their assertions of their

---

[4]      *Id.* at 101 (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C. Cir. 1977)).

[5]      *See id.* at 101 & n.10.

4

constitutional rights.[6]  Hence, the suggestion that pretrial discovery here would injure KPMG is unpersuasive, as KPMG appears to want discovery regardless of where this dispute is litigated.  Even if that were not the case, any depositions or other discovery taken here during the pendency of the appeal could be used in any arbitrations that eventually might take place.  So it is difficult to regard such discovery as irreparable injury.  Nor does the fact that the KPMG Defendants have served what KPMG claims are expansive document requests alter this analysis.  If, after seeking agreement on narrower requests, KPMG still has objections to any of the discovery, it has ample recourse in this Court, just as would any other litigant.

The analysis of the possibility that these claims could be tried in this Court and, indeed, result in a judgment here rather than in arbitral *fora* is somewhat different.

If further proceedings before this Court threatened irrevocably to deprive KPMG, assuming it ultimately prevailed on its claim that the matter should be arbitrated, of an arbitral as distinct from a court decision, KPMG could be threatened with irreparable injury.  But that is not the case.  Even if the advancement claim now before this Court were tried to judgment, any error in proceeding with it here rather than compelling arbitration could be corrected by the Court of Appeals vacating the judgment.  Hence, KPMG's position amounts only to a claim that participation in a trial here – as distinguished from its result – itself would constitute irreparable injury.  So we turn to that contention.

If KPMG prevailed in this Court, which is possible, it presumably would be quite happy with the result and drop the appeal.  In that event, participation in a trial here would have resulted in no injury at all.

---

[6]      *Stein III,* 2006 WL 2556076, at *4-5, 14.

It is possible also that KPMG would lose here and appeal. Were that to occur, there would be at least two possibilities.

First, KPMG might succeed on the arbitration issue on appeal without the Court of Appeals addressing the merits. In that event, the cost and inconvenience of the trial to some degree would have been unnecessary, as the matter might go on to arbitration. At the moment, however, that contingency is somewhat remote.[7]

Second, if KPMG lost in this Court and appealed, it doubtless would argue not only that the matter should have been referred to arbitration, but that the judgment should be reversed on the merits. Were it to do so, and were the Court of Appeals to agree with it, that Court might simply reverse on the merits, without reaching the arbitration question. In that event, KPMG presumably would be entirely satisfied.

In sum, KPMG has demonstrated only a modest threat of irreparable injury in the absence of a stay – the possibility, but by no means certainty, that the following contingencies all would occur: (1) KPMG would try this case in this Court before an appellate decision were reached, (2) lose on the merits, (3) and then prevail on appeal on the arbitration issue without the Court of Appeals reaching the merits. But an applicant for a stay pending appeal must demonstrate threatened

---

[7]    The trial of this action will not commence until October 17. KPMG is free to move in the Court of Appeals to expedite its appeal. Our Circuit repeatedly has decided cases quickly where the circumstances warranted. Thus, it is possible that KPMG, if this Court's order is appealable, would have a decision before trial regardless of whether there is a stay.

The Second Circuit recently denied the government's motion to expedite its appeal from an order granting in part and denying in part a suppression motion by some of the KPMG Defendants. No. 06-3999, order denying motion for issuance of expedited scheduling order (2d Cir. filed Sept. 15, 2006).

irreparable injury that is imminent or certain, not a matter of speculation.[8]  As the Court of Appeals recently explained in an analogous context, in evaluating the likelihood of the occurrence of a particular outcome which itself depends upon a number of antecedent contingencies, it is essential to evaluate the likelihood of the occurrence of each of the contingencies.[9]

Taking everything into consideration, the Court finds that KPMG has demonstrated no more than a minimal threat of irreparable injury.

2.      *Injury to Parties Opposing Stay and the Public Interest*

The KPMG Defendants all stand indicted on serious charges.  Their lives, in a real sense, are in suspense pending a determination of guilt or innocence.  They are entitled to a fair and speedy trial.  The public, too, deserves a prompt adjudication of these charges on the merits if that is possible.  Further delay of a determination of the advancement issue, which would be the result of a stay pending appeal, almost certainly would delay the trial of the indictment.

As *Stein III* and *Stein I* demonstrated, proceeding with the indictment prior to resolution of the advancement issue would force the Court to compromise either the public interest in having the indictment tried purely on the merits[10] or the rights of the public and the KPMG

---

[8]      *See, e.g., In re Bogdanovich,* No. 00 Civ. 2266 (JGK), 2000 WL 1708163, at *6 (S.D.N.Y. Nov. 14, 2000); *Equal Employment Opportunity Comm'n v. Local 638,* No. 71 Civ. 2877 (RLC), 1995 WL 355589, at *2 (S.D.N.Y. June 7, 1995).

[9]      *United States v. Heath,* 455 F.3d 52, 59-60 (2d Cir. 2006) (determining whether illegally seized evidence inevitably would have been discovered by lawful means requires examination of the likelihood that each of the conditions precedent to lawful discovery would have occurred) (citing *United States v. Lavan,* 10 F. Supp. 2d 377, 389 (S.D.N.Y. 1998)).

[10]      As noted in *Stein III* and *Stein I,* there would be a greater likelihood of dismissal of all or part of the indictment as to these defendants or other sanctions for the government's violation of their rights if it turns out that KPMG is not obliged to advance defense costs. *Stein III,* 2006

Defendants to a prompt and fair trial.[11]  Any of the alternatives thus would irreparably harm the KPMG Defendants, the public interest, or both.[12]

In these circumstances, the hardships that would be imposed on the KPMG Defendants and prejudice that would result to the public interest if a stay were granted and the order appealed from upheld would far outweigh any irreparable injury that KPMG would suffer if a stay were denied and the order appealed from reversed.  In consequence, a stay should be granted here only on a strong showing that KPMG is likely to prevail on appeal.

3.    *Likelihood of Success on Appeal*

(a)    *Appellate Jurisdiction*

In order to prevail, KPMG first must establish that the Court of Appeals has jurisdiction over the appeal from this Court's order denying its motion to dismiss the action.  While

---

WL 2556076, at *12; *see Stein I,* 435 F. Supp. 2d at 373-74.

[11]    The fact that the KPMG Defendants all are represented by counsel is no answer to this point. The government's interference with their right to counsel of their choice and to fundamental fairness in the criminal process is presumptively prejudicial. *Stein I,* 435 F.  Supp. 2d at 371-73.

[12]    KPMG argues that there would be no additional delay in consequence of a stay because it "will ask the United States Court of Appeals for the Second Circuit to hear this appeal on an expedited basis *as a related case to the Government's pending expedited appeal of this Court's suppression order, dated July 25, 2006."*  Docket item 753, at 1, 2-3 (emphasis added). The Court of Appeals, however, *denied* the government's motion to expedite that appeal.  No. 06-3999, order denying motion for issuance of expedited scheduling order (2d Cir. filed Sept. 15, 2006).  In fact, the scheduling order entered by the Circuit on September 15, 2006 provides that the government's appeal will be heard no earlier than the week of December 18, 2006, just one month before the scheduled start of the trial on the indictment. If a stay were granted and the KPMG appeal heard on the same schedule as the government's appeal, the trial would have to be delayed, perhaps for many months.  In any case, the government's interlocutory appeal will not delay the trial on the indictment.  The trial is being delayed principally, perhaps entirely, by the fee advancement dispute.

8

that question ultimately will be for the Court of Appeals, this Court must consider it in order to evaluate KPMG's likelihood of success.

Appeals generally lie only from final judgments.[13]  In consequence, orders denying motions to dismiss are not appealable.  Thus, if appellate jurisdiction exists, it must be by virtue of Section 16(a) of the Federal Arbitration Act ("FAA").[14]

The order appealed from, insofar as it declined to refer the matter to arbitration, would have been appealable under Section 16(a)(1)(B) of the FAA if it had been entered in a civil case. This, however, is a criminal case.[15]  For reasons to which the Court previously alluded, it therefore is questionable whether the FAA has any bearing here at all.[16]  Hence, while the question is one of first impression, there is a possibility that no part of the order appealed from is appealable at this stage.  And even if there is appellate jurisdiction over the arbitration issue, it is doubtful that the part of the order that denied KPMG's motion to dismiss for lack of subject matter jurisdiction would be appealable at this stage of the proceedings.

The order, to the extent it denied KPMG's motion to dismiss on jurisdictional grounds, is interlocutory.  It would not be appealable on its own.  Indeed, KPMG recognizes this in asserting that it "intends to ask the Court of Appeals to exercise pendent appellate jurisdiction" to

---

[13]     18 U.S.C. § 3742(a)-(b); 28 U.S.C. § 1291.

[14]     9 U.S.C. § 16(a).

[15]     It bears repeating that no civil action exists.  The advancement issue arises in the criminal case.  A civil docket number was opened solely as a matter of administrative convenience, as was done also in *Garcia v. Teitler,* No. 04 Civ. 832 (JG), 2004 WL 1636982 (E.D.N.Y. July 22, 2004), *aff'd,* 443 F.3d 202 (2d Cir. 2006).

[16]     *Stein III,* 2006 WL 2556076, at *8 & n.41.

9

reach this point.[17]  Rather, it seeks to have the Court of Appeals exercise ancillary jurisdiction to hear

KPMG's claim that this Court lacks ancillary jurisdiction.  Irony aside, it is doubtful that the Court

of Appeals would do so.

       In *Swint v. Chambers County Commission,* the Supreme Court cast doubt on the

existence of pendent appellate jurisdiction altogether.[18]  While the Second Circuit has not read

*Swint* as entirely foreclosing the existence of pendent appellate jurisdiction, it has emphasized that

its exercise will be rare indeed:

>      "'Pendent appellate jurisdiction allows an appeals court to exercise
> jurisdiction over a non-final [and therefore otherwise unappealable] claim where the
> issue is inextricably intertwined with an issue over which the court properly has
> appellate jurisdiction,' *Stolt-Nielsen SA v. Celanese AG,* 430 F.3d 567, 576 (2d Cir.
> 2005) (internal quotation marks and citation omitted; alterations incorporated), or
> where 'review of the otherwise unappealable issue is necessary to ensure meaningful
> review of the appealable one,' *Luna v. Pico,* 356 F.3d 481, 487 (2d Cir. 2004)
> (internal quotation marks and citation omitted).
>
>      "'In the federal system, there is a general presumption against immediate
> appellate review of nonfinal orders, and the Supreme Court has cautioned against the
> adoption of a "flexible" or "loose" approach in connection with the exercise of
> pendent appellate jurisdiction. *See Swint v. Chambers County Commission,* 514 U.S.
> 35, 45-50, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). Accordingly, we have exercised
> such jurisdiction only in exceptional circumstances.' *Munafo [v. Metro. Transp.
> Auth.,]* 285 F.3d [201,] 215 [2d Cir. 2002]."[19]

Indeed, these are the "only circumstances in which [the Circuit] can review immediately an issue that

does not independently qualify for interlocutory appeal."[20]

---

[17]    Docket item 753, at 1.

[18]    514 U.S. 35, 50-51 (1995).

[19]    *Britt v. Garcia,* 457 F.3d 264, 273 (2d Cir. 2006).  *Accord, United States Fidelity and Guaranty Co. v. Braspetro Oil Servs. Co.,* 199 F.3d 94, 97 (2d Cir. 1999); *Davidson v. Chestnut,* 193 F.3d 144, 151 (2d Cir. 1999).

[20]    *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 758 (2d Cir. 1998).

The question whether this Court has ancillary jurisdiction is not "inextricably intertwined" with the question whether the KPMG Defendants, or any of them, are obliged to arbitrate that claim.  The two issues have nothing in common.  Nor is review of the ancillary jurisdiction issue "necessary to ensure meaningful review" of the arbitration question, even assuming that there is appellate jurisdiction over the arbitration issue.  If the Court of Appeals were to conclude that the matter is arbitrable, it could grant fully effective relief without regard to the existence or non-existence of ancillary jurisdiction.[21]

\*   \*   \*

The issues presented here no doubt are interesting.  As Judge Jacobs pointed out some time ago, however, "[t]here is no such thing as interesting question jurisdiction."[22]  Measured by objective standards, it is quite doubtful whether the Court of Appeals has jurisdiction over the ancillary jurisdiction issue.  The existence of jurisdiction over so much of the order as declined to refer the advancement issue to arbitration presents a question of first impression.

---

[21]  The question whether this Court has ancillary jurisdiction would not be mooted by a determination that the advancement dispute should have been referred to arbitration.  A court referring a matter to arbitration "retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate."  *Stolt-Nielsen SA v. Celanese AG,* 430 F.3d 567, 573 (2d Cir. 2005) (quoting *Smiga v. Dean Witter Reynolds, Inc.,* 766 F.2d 698, 705 (2d Cir. 1985) (internal quotation marks omitted)).  Assuming this Court has ancillary jurisdiction, it therefore would retain the power to determine applications pertaining to any arbitrations including such matters as applications concerning the selection of arbitrators, consolidation, and to confirm or vacate any award(s).

[22]  *Michael v. INS,* 48 F.3d 657, 674 (2d Cir. 1995) (Jacobs, J., dissenting).  *Accord, Cody, Inc. v. Town of Woodbury,* 179 F.3d 52, 56 (2d Cir. 1999).

_____(b)      The Merits

(1)      Arbitrability

This Court denied KPMG's motion, insofar as it related to arbitration, on two grounds. It concluded that nine of the KPMG Defendants were not parties to any relevant arbitration agreement. They had left KPMG before the 2003 partnership agreement became effective. The pertinent predecessor agreements unambiguously excluded Separated Members, a term defined to include these defendants, from their arbitration clauses. While at least one and possibly as many as seven KPMG Defendants were parties to arbitration agreements that survived their separation from the firm, the Court held that any arbitration clause, to the extent it otherwise would require arbitration of claims for advancement of defense costs in this pending criminal case, is void as against public policy.

In this Court's view, KPMG has little if any likelihood of prevailing on appeal with respect to the nine KPMG Defendants who this Court concluded are not parties to any relevant arbitration agreement, even assuming that the Court of Appeals has jurisdiction over that portion of its appeal. For reasons set forth in *Stein III,* the language of the pertinent agreements is crystal clear in excluding Separated Members from the obligation to arbitrate disputes with the firm.[23]

Nor are KPMG's prospects on appeal, assuming the existence of appellate

_____

[23]      *Stein III,* 2006 WL 2556076, at *9-10.

In consequence, KPMG's assertion that the Court erred in failing "to assess the Defendants' advancement claims against the very pre-2003 contracts at issue in light of the specific criteria established . . . for determining when a post-separation claim arises under a contract's arbitration clause," Docket item 753, at 9-10, is entirely baseless. These contracts – by their explicit distinctions between Members and Separated Members and their reference in the arbitration clauses only to Members – expressly excluded Separated Members from any obligation to arbitrate, regardless of whether a post-separation claim arises under the partnership agreement.

jurisdiction, with respect to the other seven KPMG Defendants particularly high.[24]  To begin with, KPMG has conceded the principle that courts "may displace an arbitration clause on the ground of a competing public policy" where that competing policy is explicit, well defined and dominant.[25] And while it maintains that this Court pointed to no "well defined and dominant" sources of public policy, relying instead  "on the most generalized of public interests,"[26] saying so does not make it so. Perhaps the KPMG Defendants' and the public's interests in a speedy trial, the KPMG Defendants' Fifth and Sixth Amendment rights, the public interest in an adjudication of the indictment on the merits, and the Court's obligation under the Criminal Justice Act to ensure that public funds are not spent where other funds are lawfully available to criminal defendants from private sources are not "well defined and dominant" – but this Court would regard that as an unlikely and surprising conclusion.

### (2)    *Ancillary Jurisdiction*

KPMG argues also that it is likely to prevail on its contention that this Court lacks ancillary jurisdiction over the fee advancement dispute.  Apart from rehashing arguments twice rejected by this Court on the direct authority of *Garcia v. Teitler*[27] and *United States v. Weissman,*[28]

---

[24]    It should be borne in mind also that this Court has not yet determined that the other seven defendants would be obliged to arbitrate this dispute if the FAA applies here even if the arbitration clauses relied upon by KPMG were not void as against public policy to the extent that the Court has held.

[25]    Docket item 753, at 7.

[26]    *Id.* at 8.

[27]    443 F.3d 202.

[28]    No. S2 94 Cr. 760 (CSH), 1997 WL 334966 (S.D.N.Y. June 16, 1997).

and repeating baseless and for present purposes irrelevant complaints that its due process rights necessarily would be disregarded were the Court to resolve the advancement issue promptly,[29] it contends that the ruling is inconsistent, or at least in tension, with *Peacock v. Thomas*.[30]  The contention borders on the frivolous.

The plaintiff in *Peacock* sued his former employer and one of its executives for benefits allegedly due under a pension plan.  He prevailed against the former employer, but was unsuccessful as against the executive.  After that decision was affirmed, he brought an entirely new action against the executive alone, claiming that the executive had conspired to siphon assets from the former employer to prevent satisfaction of the judgment in the first action.  He asserted that jurisdiction in the second action was ancillary to that in the previously concluded first action.

The Supreme Court recognized the doctrine of ancillary jurisdiction, including specifically the branch relied upon by the Circuit in *Garcia* and by this Court.  In other words, it recognized that a court has ancillary jurisdiction "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."[31]  But it then, not surprisingly, went on to hold that the second action was not ancillary to the first because, *inter alia,* it was a "new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the [first] case."[32]  It said also that, "[i]n a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold

---

[29]     Docket item 753, at 5-6.

[30]     516 U.S. 349 (1996).

[31]     *Id.* at 354 (quoting *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 380 (1994) (internal quotation marks omitted)).

[32]     *Id.* at 359.

jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction."[33]

The difference between *Peacock* and this case is obvious.  The advancement issue arises in this criminal case in consequence of the need to determine the remedy for the government's violation of the KPMG Defendants' constitutional rights by interfering with KPMG's advancement of defense costs.  It thus is intertwined with the criminal case and must be determined to permit this Court "to function successfully."  It most certainly is not the subject of an entirely separate and subsequent suit based on theories of relief that do not now exist.

In sum, KPMG's prospects for success on the ancillary jurisdiction issue, even assuming that there is appellate jurisdiction, which itself is doubtful, are quite limited.

4.      *Synthesis*

In the last analysis, the Court is obliged to weigh the various considerations with respect to a stay pending appeal.  KPMG is faced with no immediate threat of irreparable injury, although a trial here before a determination of the appeal, if that were to occur, conceivably might result in a modest degree of such injury in the future, depending upon the outcome of a number of uncertain contingencies.  Even that somewhat remote and speculative threatened injury is very substantially outweighed by the KPMG Defendants' and the public's interest in a determination of the advancement claims on the merits without further delay.  KPMG has virtually no prospect of success on appeal with respect to the nine defendants who, the Court has held, are not parties to any relevant arbitration agreement, even without considering the appealability of the order in question.

---

[33]      *Id.* at 355.

Taking into account the strength of the KPMG Defendants' position on the public policy issue as well as the open question of its appealability, KPMG's likelihood of success on appeal even as to the other seven KPMG Defendants, although a bit stronger, is far from imposing.  And the likelihood that the Court of Appeals would both entertain KPMG's jurisdictional challenge and rule in its favor on that issue is slight.

This conclusion is not altered by the government's recent application for a six month continuance of the January 2007 trial date for the criminal charges.  The request is based in part on the assumption that the resolution of the fee advancement issue, notwithstanding the October 17 trial date for that issue, "will be a matter of months not weeks," in part on an acknowledgment that defense counsel probably will need more time to prepare their defenses to the criminal charges given the time necessary for the advancement trial, and in part on the government's desire to have more time to negotiate plea bargains after the advancement issue is resolved.[34]

The government's application has not yet been resolved.  Nevertheless, this Court does not share the government's premise that the advancement issue will take "months and not weeks."[35]   And the government's premise aside, the Court is persuaded that the resolution of the request for a continuance, however it is decided, should not affect the present application for a stay pending appeal.  A stay pending appeal would delay the resolution of the advancement issue with little compensating benefit.  Indeed, it could result in the Court and the parties all being in very much

---

[34]      Letter, John M. Hillebrecht, Sept. 22, 2006.

[35]      Absent a stay, that trial will be concluded and quite possibly decided at this level by the end of October.  An expedited appeal, if that proves necessary, could be resolved quickly.  So a January 2007 trial is not yet out of the question.  While some continuance may prove appropriate, there appears to be little reason for a continuance as long as six months absent a stay pending appeal and a material delay in the resolution of the pending appeal.

16

the same position some months from now that they are in today. The public interest in the resolution

of this indictment is too great, in the view of the undersigned, to permit this unnecessarily.[36]


*Conclusion*

For the foregoing reasons, KPMG's motion for a stay pending appeal is denied.

SO ORDERED.

Dated:        September 25, 2006


_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[36]     The original indictment in this case was returned in August 2005.  Under the government's proposal, the trial would not begin until 23 months later.  A stay could result in material delay beyond that.